## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| X CORP., | C.A. No. 25-cv-1510-CFC |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| OPERATION BLUEBIRD, INC., | |
| Defendant. | |
| OPERATION BLUEBIRD, INC., | |
| Counterclaim-Plaintiff, | |
| v. | |
| X CORP., | |
| Counterclaim-Defendant. | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
## OF OPERATION BLUEBIRD, INC.

Defendant/Counterclaim-Plaintiff Operation Bluebird, Inc. ("Bluebird"), by and through its attorneys, hereby answers the complaint of Plaintiff/Counterclaim-Defendant X Corp. ("X Corp.") in this action, dated December 16, 2025, as follows:

## **Nature of the Case**[1]

1.      Bluebird admits that it intends to use some of the abandoned TWITTER and TWEET Marks in connection with its planned new social media network. Bluebird denies the remainder of the allegations in Paragraph 1.

2.      Bluebird admits that the image shown in Paragraph 2 is an accurate depiction of one of the screens that can be seen on the website at twitter.new. Bluebird denies that X owns valid rights in the TWITTER mark and the remainder of the allegations in Paragraph 2.

3.      Bluebird denies the allegations in Paragraph 3.

4.      Bluebird admits that the Twitter platform launched in 2006 and changed the social media landscape. Bluebird admits that the former Twitter platform was rebranded to X in 2023. Bluebird denies the remainder of the allegations in Paragraph 4.

5.      Bluebird denies that X Corp. actively maintains and enforces its rights in the TWITTER brand and marks. Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 5 and on that basis denies those allegations in full.

6.      Bluebird admits that it plans to launch a social media platform called

---

[1] Bluebird has reproduced the headings from X Corp.'s complaint herein solely for ease of reference.

TWITTER, which will be available at twitter.new, and that it filed a petition to cancel X Corp.'s registrations of various TWITTER Marks. Bluebird further admits that it is counseled and led in part by Stephen Coates, Twitter Inc.'s former intellectual property counsel. Bluebird admits the accuracy of the quotes included in Paragraph 6 but denies their characterization. The words are quoted out of context. Bluebird denies the remainder of the allegations in Paragraph 6.

7.    Bluebird denies the allegations in Paragraph 7.

8.    Bluebird admits that Mr. Peroff made the quoted statement but denies its characterization. The words are quoted out of context. Bluebird denies the remainder of the allegations in Paragraph 8.

9.    Bluebird admits that Mr. Raper made the quoted statement but denies its characterization. The words are quoted out of context. Bluebird denies the remainder of allegations in Paragraph 9.

10.    Bluebird admits that it plans to launch a social media platform called TWITTER, which will be available at twitter.new. Bluebird denies the remainder of the allegations in Paragraph 10.

11.    Bluebird denies the allegations in Paragraph 11.

## The Parties

12.    Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and on that basis denies those

allegations in full.

13.    Bluebird admits the allegations in Paragraph 13.

## Jurisdiction and Venue

14.    Paragraph 14 asserts conclusions of law as to which no responsive pleading is required. To the extent any response is required, Bluebird denies the allegations in full, with the exception that Bluebird does not contest the jurisdiction of this Court.

15.    Paragraph 15 asserts conclusions of law as to which no responsive pleading is required. To the extent any response is required, Bluebird denies the allegations in full, with the exception that Bluebird admits that it is incorporated in and conducts business in the State of Delaware.

16.    Paragraph 16 asserts conclusions of law as to which no responsive pleading is required. To the extent any response is required, Bluebird denies the allegations in full, with the exception that Bluebird admits that it conducts business in this District.

## *Origin of the TWITTER Marks and Services*

17.    Bluebird denies that X Corp. owns valid rights in the TWITTER Marks, which X Corp. has abandoned. Bluebird admits that Twitter was formerly a social networking platform operated by Twitter, Inc. Bluebird denies that X Corp. continues to operate a social media platform under the name Twitter. Bluebird

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and on that basis denies those allegations in full.

18.     Bluebird admits that the Twitter platform became a fixture of American culture before X Corp. changed the name of the platform and its products and services to X. Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 18 and on that basis denies those allegations in full.

19.     Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and on that basis denies those allegations in full.

20.     Bluebird admits that the former Twitter platform evolved over time to allow users to share photos, videos, and other types of content. Bluebird denies the remainder of the allegations in Paragraph 20.

### *Twitter Inc.'s Merger Into X Corp. and X Corp.'s TWITTER Trademark Portfolio*

21.     Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and on that basis denies those allegations in full.

22.     Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and on that basis denies those allegations in full.

23.     Bluebird admits that X Corp. is listed as the owner of the cited registrations; it denies, however, that those registrations are valid and denies that X Corp. owns any valid rights in the TWITTER Marks. Bluebird denies the remainder of the allegations in Paragraph 23.

### *X Corp.'s Social Media Platform Today*

24.     Bluebird admits that X Corp. rebranded the platform formerly known as Twitter in or around July 2023. Bluebird denies the remainder of the allegations in Paragraph 24.

25.     Bluebird admits that X Corp. sometimes refers to the X platform as "X (formerly Twitter)." Bluebird denies that X Corp. makes *bona fide* use of Twitter in the ordinary course of trade. Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 25 and on that basis denies those allegations in full.

26.     Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and on that basis denies those allegations in full.

27.     Bluebird denies that X Corp. makes *bona fide* use any of the TWITTER Marks in the ordinary course of trade. Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 and on that basis denies those allegations in full.

28.    Bluebird admits that X Corp. operates a blog that is available at

https://blog.x.com. Bluebird denies that the X Corp. operates a blog at

https://blog.twitter.com. Bluebird admits that archived copies of old articles

referring to the Twitter platform can be found by searching the blog available at

blog.x.com. Bluebird denies that X Corp. maintains use of the TWITTER Marks on

its social media pages. The remainder of Paragraph 28 asserts conclusions of law as

to which no responsive pleading is required. To the extent any response is required,

Bluebird denies the allegations in full.

29.    Bluebird denies that X Corp. makes *bona fide* use of any of the

TWITTER Marks in the ordinary course of trade. The remainder of Paragraph 29

asserts conclusions of law as to which no responsive pleading is required. To the

extent any response is required, Bluebird denies the allegations in full.

30.    Bluebird denies that third parties use Twitter or Tweet in a way that

inures to the benefit of X Corp. Bluebird denies that consumers and the media

consistently refer to X Corp.'s core product as Twitter or its posts as Tweets.

Bluebird admits that JetBlue depicts the Twitter bird on its website but denies that

JetBlue's depiction has any impact on X Corp.'s rights. Bluebird lacks knowledge

or information sufficient to form a belief as to the truth of the remainder of the

allegations in Paragraph 30 and on that basis denies those allegations in full.

31.    Bluebird admits that media personalities and consumers recognize that

X Corp. rebranded its social media platform and that the X platform is no longer called Twitter. Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and on that basis denies those allegations in full.

32.    Bluebird denies that X Corp. is the rightful owner of the abandoned TWITTER Marks, and Bluebird denies that X Corp. owns valid federal registrations of the TWITTER Marks. Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32 and on that basis denies those allegations in full.

33.    Paragraph 33 asserts conclusions of law to which no responsive pleading is required; it also alleges information about which Bluebird lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 33. On those bases, Bluebird denies the allegations in Paragraph 33 in full.

### _Bluebird's Infringing Uses and Attempted Registration of "TWITTER" AND "TWEET"_

34.    Bluebird admits that Mr. Peroff filed the referenced applications on July 25, 2023, and that the applications were refused by the USPTO. The official records of the USPTO speak for themselves. Bluebird denies the remaining allegations in Paragraph 34.

35.    Bluebird admits that PEROFF IP filed the referenced applications, and that those applications were preliminarily refused. The official records of the

USPTO speak for themselves. Bluebird denies that X Corp. owns valid registrations of TWITTER and denies the remaining allegations in Paragraph 35.

36.    Bluebird admits that it executed trademark assignments for the referenced applications on July 26, 2025, and December 1, 2025, respectively, and that those applications are currently suspended. Bluebird denies the remainder of the allegations in Paragraph 36.

37.    Bluebird denies that X Corp. owns valid registrations for TWITTER or TWEET and denies that all of the identified registrations are incontestable. Bluebird admits the remainder of the allegations in Paragraph 37.

38.    Bluebird admits that it filed the referenced applications on December 2, 2025, and that those applications are in the same classes and have overlapping services with existing registrations for which X Corp. is listed as the owner. Bluebird denies that X Corp. owns valid registrations for TWITTER or TWEET and denies the remainder of the allegations in Paragraph 38.

39.    Bluebird denies that anything about its website at twitter.new is infringing. Bluebird admits the remainder of the allegations in Paragraph 40.

40.    Bluebird admits that users are shown the screen depicted in Paragraph 41 when they sign up on Bluebird's website. Bluebird admits that users are prompted to fill in information on that page, subject to the terms and conditions of the website. Bluebird admits that it reserves the right to deny or reassign handles.

Bluebird denies the remainder of the allegations in Paragraph 41.

41.     Bluebird admits that users who sign up at twitter.new are shown the screen depicted in Paragraph 41. Bluebird denies the remaining allegations in Paragraph 41.

42.     Bluebird admits that its website includes a disclaimer of any affiliation with X Corp. or Twitter, Inc. Bluebird denies the remaining allegations in Paragraph 42.

43.     Bluebird admits that it operates a LinkedIn account @Operation Bluebird, through which it has announced its planned launch of its new social media platform. Bluebird also admits that some people affiliated with Bluebird have made statements announcing Twitter.new on their personal LinkedIn pages. Bluebird denies the remaining allegations in Paragraph 43.

44.     Bluebird admits that it has stated that it is "looking to improve the social media experience," and that it plans to offer a social media platform. Bluebird denies the remaining allegations in Paragraph 44.

45.     Bluebird admits that the screenshot depicted in Paragraph 45 is accurate. Bluebird denies that X Corp. owns rights to a "distinctive blue color scheme" and denies the remaining allegations in Paragraph 45.

46.     Bluebird admits that the screenshot depicted in Paragraph 46 is accurate. Bluebird denies the remaining allegations in Paragraph 46.

47.    Bluebird denies that it is infringing or has any intent to infringe. Bluebird denies the remaining allegations in Paragraph 47.

48.    Bluebird admits that its planned platform does not target a particular type of industry or consumer. Bluebird admits that it has received over 144,000 handle requests, and that it received more than 100,000 of those requests shortly after it announced the launch of Twitter.new. Bluebird denies the remaining allegations in Paragraph 48.

49.    Bluebird admits that it intends to launch a social media platform that would compete with X Corp.'s X-branded social media platform. Bluebird denies that X Corp. offers any social media services under the TWITTER Marks and denies the remaining allegations in Paragraph 49.

50.    Bluebird admits that it has advertised its new social media platform as "the all-new TWITTER," but denies the remaining allegations in Paragraph 50.

### *Bluebird's Conduct Further Infringes Upon X Corp.'s Valid and Subsisting Copyrights*

51.    Bluebird lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 and on that basis denies those allegations in full.

52.    Bluebird admits the allegations in Paragraph 52.

53.    Bluebird admits the allegations in Paragraph 53.

54.    Paragraph 54 asserts conclusions of law as to which no responsive

pleading is required. To the extent any response is required, Bluebird denies the allegations in full.

55.    Bluebird admits that it uses a logo with a stylized bird design and that it uses the color blue. Bluebird admits that the image presented as "Bluebird's Use" is accurate. Bluebird lacks knowledge or information as to the truth of the allegations regarding X Corp.'s purported use of the bird images, and on that basis denies those allegations. Bluebird denies that X Corp. continues to make *bona fide* use of any of those bird images in the ordinary course of trade. Bluebird denies the remainder of the allegations in Paragraph 55.

56.    Bluebird denies the allegations in Paragraph 56.

57.    Bluebird admits that Twitter, Inc. adopted the bird logos prior to Bluebird's adoption of its visually distinct bird logo. Bluebird admits that Steve Coates is Bluebird's General Counsel and was formerly intellectual property counsel to Twitter, Inc. Bluebird admits that Mr. Coates was intellectual property counsel to Twitter, Inc. at the time the referenced copyright registrations were filed. Bluebird denies the remaining allegations in Paragraph 57.

58.    Bluebird denies the allegations in Paragraph 58.

## <u>COUNT ONE</u>
### (Registered Trademark Infringement
### Under Section 32 of the Lanham Act, 15 U.S.C. § 1114)

59.    Bluebird repeats and realleges each and every response to Paragraphs

1-58 above as if fully set forth herein.

60.     Bluebird denies the allegations in Paragraph 60.

61.     Bluebird denies the allegations in Paragraph 61, with the exception that Bluebird admits that it has applied to register TWITTER in the same class as X Corp.'s registrations; however, Bluebird denies that X Corp.'s registrations are valid.

62.     Bluebird denies the allegations in Paragraph 62.

63.     Bluebird denies the allegations in Paragraph 63.

64.     Bluebird denies the allegations in Paragraph 64.

65.     Bluebird denies the allegations in Paragraph 65.

66.     Bluebird denies the allegations in Paragraph 66.

## <u>COUNT TWO</u>
### (Delaware Common Law Trademark Infringement and Unfair Competition)

67.     Bluebird repeats and realleges each and every response to Paragraphs 1-66 above as if fully set forth herein.

68.     Bluebird denies the allegations in Paragraph 68.

69.     Bluebird denies the allegations in Paragraph 69.

70.     Bluebird denies the allegations in Paragraph 70.

71.     Bluebird denies the allegations in Paragraph 71.

72.     Bluebird denies the allegations in Paragraph 72.

## COUNT THREE
### (Federal Counterfeiting Under 15 U.S.C. § 1114)

73.     Bluebird repeats and realleges each and every response to Paragraphs 1-72 above as if fully set forth herein.

74.     Bluebird denies that X Corp.'s registered marks are valid, and, on that basis, denies the allegations in Paragraph 74.

75.     Bluebird denies the allegations in Paragraph 75.

76.     Bluebird denies the allegations in Paragraph 76.

77.     Bluebird denies the allegations in Paragraph 77.

78.     Bluebird denies the allegations in Paragraph 78.

79.     Bluebird denies the allegations in Paragraph 79.

## COUNT FOUR
### (False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125)

80.     Bluebird repeats and realleges each and every response to Paragraphs 1-79 above as if fully set forth herein.

81.     Bluebird denies the allegations in Paragraph 81.

82.     Bluebird denies the allegations in Paragraph 82.

83.     Paragraph 54 asserts conclusions of law as to which no responsive pleading is required. To the extent any response is required, Bluebird denies the allegations in full.

84.     Bluebird denies the allegations in Paragraph 84.

14

85.     Bluebird denies the allegations in Paragraph 85.

86.     Bluebird denies the allegations in Paragraph 86.

87.     Bluebird denies the allegations in Paragraph 87.

## COUNT FIVE
**(Deceptive Trade Practices under Delaware Law; 6 Del. C. § 2532)**

88.     Bluebird repeats and realleges each and every response to Paragraphs

1-87 above as if fully set forth herein.

89.     Bluebird denies the allegations in Paragraph 89.

90.     Bluebird denies the allegations in Paragraph 90.

91.     Bluebird denies the allegations in Paragraph 91.

92.     Bluebird denies the allegations in Paragraph 92.

93.     Bluebird denies the allegations in Paragraph 93.

94.     Bluebird denies the allegations in Paragraph 94.

## COUNT SIX
**(Trademark Dilution Under the Trademark Dilution Revision Act, 15 U.S.C. § 1125(c))**

95.     Bluebird repeats and realleges each and every response to Paragraphs

1-94 above as if fully set forth herein.

96.     Bluebird denies the allegations in Paragraph 96.

97.     Bluebird denies the allegations in Paragraph 97.

98.     Bluebird denies the allegations in Paragraph 98.

99.     Bluebird denies the allegations in Paragraph 99.

100.    Bluebird denies the allegations in Paragraph 100.

101.    Bluebird denies the allegations in Paragraph 101.

102.    Bluebird denies the allegations in Paragraph 102.

## COUNT SEVEN
### (Trademark Dilution Under Delaware Law; 6 Del. C. § 3313)

103.    Bluebird repeats and realleges each and every response to Paragraphs

1-102 above as if fully set forth herein.

104.    Bluebird denies the allegations in Paragraph 104.

105.    Bluebird denies the allegations in Paragraph 105.

106.    Bluebird denies the allegations in Paragraph 106.

107.    Bluebird denies the allegations in Paragraph 107.

108.    Bluebird denies the allegations in Paragraph 108.

109.    Bluebird denies the allegations in Paragraph 109.

110.    Bluebird denies the allegations in Paragraph 110.

## COUNT EIGHT
### (Copyright Infringement Under 17 U.S.C. §§ 101 et seq.)

111.    Bluebird repeats and realleges each and every response to Paragraphs

1-110 above as if fully set forth herein.

112.    Bluebird admits that X Corp. owns copyright registrations. The

remainder of Paragraph 112 asserts conclusions of law as to which no responsive

pleading is required. To the extent any response is required, Bluebird denies the

16

allegations in full.

113.    Bluebird admits the dates of registration and registration numbers. The remainder of Paragraph 113 asserts conclusions of law as to which no responsive pleading is required. To the extent any response is required, Bluebird denies the allegations in full.

114.    Bluebird denies the allegations in Paragraph 114.

115.    Bluebird denies the allegations in Paragraph 115.

116.    Bluebird denies the allegations in Paragraph 116.

117.    Bluebird denies the allegations in Paragraph 117.

118.    Bluebird denies the allegations in Paragraph 118.

119.    Bluebird denies the allegations in Paragraph 119.

120.    Bluebird denies the allegations in Paragraph 120.

## GENERAL DENIAL

Each numbered paragraph in this answer responds to the identically numbered paragraph in X Corp.'s complaint. Bluebird denies all allegations, declarations, claims, or assertions in the complaint that are not specifically admitted in this answer.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where such burden properly rests with X Corp. and without waiving, and hereby expressly reserving, the right to assert

any and all such defenses at such time and to such extent as discovery and factual or legal developments may establish a basis therefore, Bluebird hereby asserts, as and for separate and additional defenses to the complaint, as follows:

## First Defense

X Corp.'s Lanham Act claims are barred in whole or in part because X Corp. abandoned any rights it may have had in the asserted TWITTER Marks.

## Second Defense

X Corp.'s claims are barred under the doctrines of unclean hands, arising out of X Corp.'s commission of fraud before the U.S. Patent and Trademark Office, as more fully set forth in Paragraphs 50 through 54 of Bluebird's Counterclaim.

## Third Defense

X Corp.'s claims are barred because X Corp.'s purported Twitter marks are invalid and/or unenforceable.

## Fourth Defense

X Corp.'s claims fail, in whole or in part, because X Corp. cannot demonstrate that its purported rights in the Twitter marks have been damaged or harmed.

## Fifth Defense

X Corp.'s claims fail, in whole or in part, because X Corp. has incurred no ascertainable loss caused by any action or omission of Bluebird.

Sixth Defense

X Corp.'s claims are barred, in whole or in part, on the basis that X Corp. would be unjustly enriched if allowed to recover all or any portion of the damages alleged in the complaint.

Seventh Defense

X Corp. is not entitled to injunctive relief because any alleged injury is not immediate or irreparable and it has an adequate remedy at law.

Eighth Defense

This is not an "exceptional case" under 15 U.S.C. § 1117, and X Corp. is not entitled to attorneys' fees or enhanced damages.

Ninth Defense

X Corp. has failed to satisfy the requirements for injunctive or equitable relief, including irreparable harm, balance of hardships, and public interest.

Tenth Defense

Bluebird independently developed its branding and graphical elements and did not copy protectable expression from X Corp.

Eleventh Defense

Bluebird's alleged works are not substantially similar to any protectable elements of X Corp.'s copyrighted works.

## RESERVATION OF RIGHTS

Bluebird reserves its right to amend and supplement its answer to assert any other defenses as may appear during the course of this action.

*        *        *

**WHEREFORE**, Bluebird hereby demands judgment against X Corp., dismissing the complaint in its entirety with prejudice, and awarding to Bluebird its attorneys' fees, costs, interest, and such other and further relief as the Court deems equitable and just.

## COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff Operation Bluebird, Inc. ("Bluebird"), by and through its attorneys, hereby counterclaims against Plaintiff/Counterclaim-Defendant X Corp. ("X Corp."), alleging on personal knowledge as to its own acts and otherwise on information and belief, as follows:

## NATURE OF THE ACTION

1.      Elon Musk Tweeted on July 23, 2023, "And soon we shall bid adieu to the twitter brand and, gradually, all the birds." The next day, the company and social media platform formerly known worldwide as Twitter, Inc. and Twitter were rebranded to X Corp. and X, respectively. The Twitter and Tweet brands were eradicated from X Corp.'s products, services, and marketing, effectively abandoning the storied brands, with no intention to resume use of the marks. The

20

Twitter bird has been grounded ever since.

2.      Bluebird seeks to use and register the Twitter and Tweet brands, which X has abandoned, for new products and services, including a social media platform that will be located at the website twitter.new.

## PARTIES

3.      Counterclaim-Plaintiff Bluebird is a Delaware corporation with its principal place of business at 3057 Nutley Street #801, Fairfax, Virginia 22031.

4.      Counterclaim-Defendant X Corp. is a Nevada corporation with an address at 1355 Market Street, Suite 900, San Francisco, California 94103.

## JURISDICTION AND VENUE

5.      These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §2201, and the Lanham Act, 15 U.S.C. §§1051 et seq.

6.      This Court has subject matter jurisdiction over this counterclaim under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, and 1338.

7.      This Court has personal jurisdiction over Counterclaim Defendant by virtue of, among other bases, its residence within the State of Delaware and their commission of wrongful acts within the State of Delaware, and by virtue of it having filed their Complaint in this Court, so as to submit itself to the jurisdiction and process of this Court.

8.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§

1391(b) and (d).

## **RELEVANT FACTUAL BACKGROUND**

9.     The X platform, formerly known as Twitter, is one of the world's largest social media platforms and most visited websites (www.x.com).

10.     The X platform enables users to exchange short text messages (of limited characters), photos, and videos in short posts originally referred to as "tweets" (now officially known as "posts").

## **Twitter's History**

11.     Twitter's creation is credited to its co-founder Jack Dorsey, who envisioned it as an SMS-based communications platform where friends could follow each other via status updates.

12.     Twitter was created in March 2006 and launched in July of that year. It was originally referred to as TWTTR, following a then-prevalent trend of dropping vowels from company names for domain name purposes. Both the TWTTR and "Twitter" names are credited to Noah Glass, who was a software developer at the company.

13.     On March 21, 2006, at 9:50 p.m., Jack Dorsey sent the first Twitter message (later known as a "tweet"), which read "just setting up my twttr." In 2021, that same message was purchased as a nonfungible token (NFT) by a crypto entrepreneur for a record-setting $2.9 million.

14.     In 2007, Twitter's popularity exploded at that year's South by Southwest (SXSW) conference where the company established a large promotional presence and increased its usage from 20,000 tweets per day to 60,000.

15.     Over the course of the next several years, the Twitter platform's popularity continued to increase, and on March 21, 2012 (6 years after its launch), the company announced that it had amassed 140 million users, who were sending 340 million tweets per day.

16.     Twitter, Inc. went public in 2013 and traded on the New York Stock Exchange under the symbol "TWTR." Twitter's initial public offering (or IPO) generated great publicity and interest, and the company sold 70 million shares at an IPO price of $26 per share and raised $1.8 billion on its first day of trading.

17.     In 2016, Twitter had an outsized impact on the U.S. Presidential election, as it was the favorite social media platform for then-candidate and eventual victor, Donald Trump, who posted nearly 8,000 times during the campaign, generating massive worldwide publicity and media coverage of statements that were often controversial and intended to drive the news cycle.

18.     By 2019, Twitter claimed that it had more than 330 million active monthly users. In the meantime, coined terms associated with the platform like "hashtag," "tweet," and "retweet" entered the public consciousness and became widely adopted in everyday usage around the world.

**Elon Musk's Acquisition of Twitter and Public Abandonment of the Twitter Brand and Marks**

19.    On April 4, 2022, following the COVID-19 pandemic and Twitter's decision to ban former President Trump after the January 6, 2021, attack on the U.S. Capitol, the world's richest man, Elon Musk, disclosed that he had bought a 9.1% stake in Twitter for $2.64 billion.

20.    Following the purchase, Musk was appointed to Twitter's board.

21.    A few days later, on April 14, 2022, Musk made an unsolicited offer to acquire Twitter, Inc. for $44 billion and to take the company private, citing a desire to introduce new features to the platform and to promote free speech.

22.    After initially resisting Musk's buyout offer, Twitter Inc.'s board unanimously accepted it on April 25, 2022. A few months later, Musk—citing a proliferation of fake accounts on the platform—announced his intention to terminate the proposed acquisition, claiming in a regulatory filing that Twitter was in "material breach" of the merger agreement. The company, however, sued Musk in the Delaware Chancery Court on July 12, 2022, to enforce the deal.

23.    On October 4, 2022, Musk reversed course and announced his intention to move forward with the acquisition. That same day at 6:41 PM EST, Musk tweeted: "Buying Twitter is an accelerant to creating X, the everything app" and "Twitter probably accelerates X by 3 to 5 years, but I could be wrong."

24.    On October 27, 2022, Musk completed the acquisition of Twitter, Inc.

for $44 billion and became its sole director.

25.     Over the course of the next several weeks, Musk commenced a

massive overhaul of the company, including firing key executives and initiating

mass layoffs (about half of the workforce).

26.     Upon information and belief, Twitter, Inc. legally merged with X

Corp. in March 2023 and ceased to exist as a separate entity. The merger was

publicly disclosed in a legal filing made on April 4, 2023.

27.     On July 23, 2023, Musk publicly announced the rebranding of Twitter

to X on his then-Twitter account and posted: "And soon we shall bid adieu to the

Twitter brand and, gradually, all the birds." The post remains on his timeline on

X.com and has been viewed 58.7 million times.



28.     On the same day, Musk also announced that X.com, a domain name he

had acquired from PayPal in 2017, would redirect to twitter.com.

29.     A day later, on July 24, 2023, X Corp. unveiled its new logo, 𝕏 ("X

Logo"), which replaced Twitter's blue bird symbol, 🐦 Twitter also changed its official handle from @twitter to @x, while the signage for Twitter's San Francisco headquarters was removed and replaced with the X Logo.



30.     On July 26, 2023, and July 31, 2023, the Twitter apps on Google Play and the Apple App Store were respectively updated to reflect the rebrand of Twitter to X and the adoption of the X Logo in place of the blue bird symbol.

31.     On August 5, 2023, Twitter's paid subscription offering, Twitter Blue (which gave users added benefits such as a blue checkmark and longer tweets) was rebranded to "X Premium" or just "Premium."

32.     On May 17, 2024, Twitter's primary domain name, twitter.com, officially redirected to x.com, indicating that the platform had been fully migrated. The transition was announced by Musk, who posted "All core systems are now on X.com."



33.     Upon launch of the X app, a social media post was no longer referred to as a Tweet, but instead simply as a "post."

**The Abandoned Twitter Marks**

34.     When Twitter, Inc. merged into X Corp., X Corp. became the owner of numerous trademark registrations then owned by Twitter by assignment on March 15, 2023 (the "Assignment"), including the following (the "Twitter Registrations"):

| Mark | Ser. No. | Reg. No. | Reg. Date |
|------|----------|----------|-----------|
| **twitter** | 77721751 | 4179739 | Jul. 24, 2012 |
| TWITTER | 85116720 | 4422235 | Oct. 22, 2013 |
| TWITTER | 77166246 | 3619911 | May 12, 2009 |
| TWITTER | 77711787 | 4362656 | Jul. 09, 2013 |

| TWITTER FLIGHT | 97491690 | 7152556 | Aug. 29, 2023 |
|---|---|---|---|
| TWITTER FLIGHT | 86391245 | 4867983 | Dec. 08, 2015 |
| TWITTER FLIGHT | 97491683 | 7152555 | Aug. 29, 2023 |
| TWITTER AMPLIFY | 90403431 | 6992306 | Feb. 28, 2023 |
| TWEET | 85116717 | 7374642 | Apr. 30, 2024 |
| TWEET | 77715815 | 4338963 | May 21, 2013 |

35.     The Assignment to X Corp. included additional trademarks popularly associated with the TWITTER social media platform and belonging to Twitter, Inc. including TWEET (Reg. No. 4338963) and the design mark  (Reg. Nos. 4552274 and 5655960).

36.     X Corp. has allowed several registrations included in the Assignment to lapse because it did not file Declarations of Use and/or renewal applications required by the U.S. Patent & Trademark Office to maintain registrations. , providing further evidence that X Corp. has abandoned and ceased using any TWITTER marks. Notable examples include TWITTER MIRROR (Reg. No. 4560475), TWEET LOVE (Reg. No. 5566932), TWTR (Reg. No. 5656050),  (Reg. No. 5655960), and  (Reg. No. 4709433).

37.     X Corp. has not filed any new trademark applications for TWITTER, TWEET, or any TWITTER or TWEET-related marks since July 6, 2022, when

Twitter, Inc. filed U.S. Application Serial No. 97491683 for TWITTER FLIGHT.

38.     Since acquiring the registrations and applications owned by Twitter, Inc. in March 2023, X Corp. has allowed several applications for marks such as TWITTER AMPLIFY (Ser. App. No. 90403411, 9043424), TWITTER FLEET (Serial Nos. 90632093, 90632088, 90632098, 90632084, 90632094, and 90632097), TWITTER MIRROR (Ser. No. 86194449), TWEETSTORM (Ser. No. 90015902), HASHFLAG (Ser. No. 88468980), HASHLOGO (Ser. No. 88468982), and BIRDSIGNALS (Ser. No. 88468985) to become abandoned.

39.     Those applications were filed prior to Twitter, Inc.'s merger with X Corp. and apparently were intended to be used in connection with the Twitter brand.

**Bluebird's Pending Trademark Applications**

40.     Bluebird is the owner of U.S. Application Serial Nos. 98100526 and 98647535 for TWITTER.

41.     On July 25, 2023, Bluebird's Application Serial No. 98100526 was filed to register TWITTER for various goods and services in Classes 9, 35, and 38 based its *bona fide* intention to use the mark.

42.     On September 6, 2024, Bluebird's Application Serial No. 98100526 was suspended, in part, pending disposition of X Corp.'s U.S. Application Serial Nos. 90403411, 90403424, 90403442, and 90403436 for the mark TWITTER

AMPLIFY, and Serial Nos. 90632093, 90632084, 90632094, 90632097, 90632098, and 90632088 for the mark TWITTER FLEET.

43.    According to records from the USPTO, X Corp.'s Application Serial Nos. 90403411 and 90403424 for the mark TWITTER AMPLIFY and 90632093, 90632084, 90632094, 90632097, 90632098, and 90632088 for the mark TWITTER FLEET were subsequently abandoned by X Corp. The other cited applications owned by X Corp. remain pending.

44.    Bluebird's Application Serial No. 98647535 was filed on July 14, 2024, to register TWITTER for various services in Classes 36, 41, and 42, based on its *bona fide* intention to use the mark.

45.    On September 14, 2023, Bluebird's Application Serial No. 98100526 was refused registration based in part on an alleged likelihood of confusion with X Corp.'s Registered Marks (excluding Reg. No. 4362656 for TWITTER).

46.    On January 7, 2025, Bluebird's Application Serial No. 98647535 was refused registration partly based on an alleged likelihood of confusion with six of the nine Registered Marks, namely, U.S. Registration Nos. 4179739, 4422235, 3619911, 7152555, 4867983, and 6992306.

47.    On April 21, 2025, Bluebird's Application Serial No. 98647535 was suspended, in part, pending disposition of X Corp.'s U.S. Application Serial Nos. 90403411, 90403424, and 90403442 for the mark TWITTER AMPLIFY, and

Serial Nos. 90632088 and 90632098 for TWITTER FLEET.

48.     On December 2, 2025, Bluebird filed Application Serial Nos.

99524594 TWITTER in Classes 42 and 45 and 99524598 for TWEET in Class 45.

These additional applications are waiting to be assigned to an examiner and

potentially face refusals based on a likelihood of confusion with X Corp.'s

Registered Marks.

**COUNT I**
**Cancellation of the Twitter Marks**

49.     Bluebird incorporates by reference Paragraphs 1-48 above as if fully

set forth herein.

50.     This is a claim for cancellation of U.S. Trademark Registration Nos.

4179739, 4422235, 4362656, 3619911, 7152556, 4867983, 7152555, 6992306,

4338963, and 7374642.[2]

51.     X Corp. has discontinued use of these marks, with no intention to

resume use. These marks thus have been abandoned by X. Corp.

52.     X Corp. through its public announcements and conduct has

evidenced a clear intention to abandon and not resume use of any of these marks.

X Corp.'s complete removal of TWITTER and TWEET branding, and X Corp.'s

---

[2] Bluebird has petitioned to cancel these registrations. *See* Exhibit 1.

rebranding of the platform to X, constitute a de facto abandonment under 15

U.S.C. §1064(3). X Corp. "bid adieu to the Twitter brand and all the birds."

53.     Moreover, X Corp. has, for several of these marks and as detailed in

Bluebird's Petition for Cancellation filed on December 2, 2025, with the U.S.

Patent and Trademark Office, Trademark Trial and Appeal Board, procured

registrations and registration renewals via misrepresentations and fraud.

54.     Bluebird has been and will continue to be damaged by Registration

Nos. 4179739, 4422235, 3619911, 4362656, 7152556, 4867983, 7152555,

6992306, 4338963, and 7374642, first because X Corp.'s alleged trademark rights

are the basis for X Corp.'s federal and state trademark infringement, trademark

dilution, and deceptive practices claims against Bluebird, and second because

Bluebird seeks, in good faith, to use and to register these abandoned marks.

## <u>COUNT II</u>
### Declaratory Judgment of Invalidity and Unenforceability of Purported Trademark Rights Due to Abandonment

55.     Bluebird incorporates by reference Paragraphs 1-54 above as if fully

set forth herein.

56.     This is a claim for declaratory judgment arising under the Declaratory

Judgment Act, 28 U.S.C. § 2201.

57.     An actual and justiciable controversy exists between Bluebird and

Counterclaim Defendant X Corp. with respect to Bluebird's alleged infringement of

the Twitter marks.

58.    X Corp. purports to own rights in the Twitter marks—marks it has

abandoned—and has asserted those rights as the basis for its federal and state

trademark infringement and dilution claims against Bluebird.

59.    Any right that X Corp. purports to own in the TWITTER marks is

invalid and unenforceable as the result of X Corp.'s abandonment of those marks.

60.    Accordingly, Bluebird is entitled to, and requests, a declaratory

judgment that X Corp.'s alleged rights in the TWITTER marks are invalid and

unenforceable.

## **TRIAL BY JURY**

61.    Bluebird demands trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Bluebird respectfully requests that:

    a.  the Court enter judgment for Bluebird and against X Corp. on all

        of X Corp.'s claims;

    b.  the Court enter judgment under § 37 of the Lanham Act, 15

        U.S.C. § 1119, cancelling X Corp. Registration Nos. 4179739,

        4422235, 3619911, 4362656, 7152556, 4867983, 7152555,

        6992306, 4338963, and 7374642;

c.  the Court issue an order declaring that X Corp.'s purported rights to the TWITTER marks are invalid and unenforceable due to X Corp.'s abandonment of those marks;

d.  the Court make a finding that X Corp. violated 15 U.S.C. § 1120 by making false and fraudulent submissions to the United States Patent and Trademark Office;

e.  the Court retain jurisdiction of this action for the purpose of enabling Bluebird to apply to the Court in the future for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith, and for the enforcement of any violations thereof; and

f.  the Court grant such other, further, and different relief as the Court deems just and proper.

Dated: February 5, 2026

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Andrew Gerber*
Gerber Law
27 Union Square West, Suite 301
New York, NY 10003
(212) 658-1810
andrew@gerberlaw.com

Christopher J. Sprigman*
Mark P. McKenna*
Rhett O. Millsaps II*
LEX LUMINA LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055
chris@lex-lumina.com
mark@lex-lumina.com
rhett@lex-lumina.com

*admitted pro hac vice

*Attorneys for Defendant/Counterclaim-
Plaintiff Operation Bluebird, Inc.*