IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| X CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 25-1510-CFC |
| | ) |
| OPERATION BLUEBIRD, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF X CORP.'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

*Of Counsel:*

Megan K. Bannigan
Jared I. Kagan
Nicole M. Flores
Daniel N. Cohen
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mkbannigan@debevoise.com
jikagan@debevoise.com
nmflores@debevoise.com
dncohen@debevoise.com

Dated: February 20, 2026

ASHBY & GEDDES
Andrew C. Mayo (#5207)
Randall J. Teti (#6334)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
rteti@ashbygeddes.com

*Attorneys for Plaintiff X Corp.*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................2

    I.  X Corp. is Likely to Succeed on its Trademark Infringement and Dilution Claims. ..................................................................................................................2

        A.  Bluebird's Use of the TWITTER Marks is Likely to Cause Confusion and Dilution. ..........................................................................................................2

        B.  Bluebird Fails to Carry Its Heavy Burden to Show Abandonment. ............3

            1.  A Rebrand Is Not a Forfeiture of Rights ................................................4

            2.  X Corp. Has Not Discontinued Use of the TWITTER Marks ..............6

            3.  Intent Is Irrelevant Here and Otherwise Unproven ...............................9

    II.  X Corp. is Likely to Succeed on Its Copyright Claim...................................10

    III.  The Remaining Preliminary Injunction Factors Favor X Corp. .....................11

CONCLUSION ................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Ass'n for Just. v. The Am. Trial Laws. Ass'n*,
   698 F. Supp. 2d 1129 (D. Minn. 2010) ............................................................. 5, 7

*Astrazeneca AB v. Camber Pharms.*,
   2015 WL 7307101 (D. Del. Nov. 19, 2015) ........................................................ 7

*BIEC Int'l. v. Glob. Steel Servs.*,
   791 F. Supp. 489 (E.D. Pa. 1992) ..................................................................... 4, 6

*Birthright v. Birthright, Inc.*,
   827 F. Supp. 1114 (D.N.J. 1993) .......................................................................... 9

*Brown & Brown, v. Cola*,
   2011 WL 1103867 (E.D. Pa. Mar. 23, 2011) ................................................. 6, 10

*Carter-Wallace, Inc. v. Procter & Gamble*,
   434 F.2d 794 (9th Cir. 1970) ................................................................................ 6

*Ciba-Geigy Corp. v. Bolar Pharm. Co.*,
   547 F. Supp. 1095 (D.N.J. 1982), *aff'd*, 719 F.2d 56 (3d Cir. 1983) ................... 3

*Ciphertrust, Inc. v. TruSecure Corp.*,
   2005 WL 8248105 (E.D. Va. Nov. 28, 2005) ................................................ 5, 10

*Com. Bancorp, LLC v. Hill*,
   2010 WL 2545166 (D.N.J. June 18, 2010) .......................................................... 5

*Crash Dummy Movie LLC v. Mattel, Inc.*,
   601 F.3d 1387 (Fed. Cir. 2010) ............................................................................ 9

*Cumulus Media, v. Clear Channel Commc'ns*,
   304 F.3d 1167 (11th Cir. 2002) ............................................................................ 6

*Eagle Snacks, v. Nabisco Brands*,
   625 F. Supp. 571 (D.N.J. 1985) ............................................................................ 3

*EETHO Brands, Inc. v. Common Cents Distributors*,
   2025 WL 2044421 (D.N.J. July 21, 2025) ......................................................... 10

<mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A"><mark style="background-color:#FDE68A">

*EH Yacht, LLC v. Egg Harbor, LLC*,
   84 F. Supp. 2d 556 (D.N.J. 2000) ................................................................................3

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp.*,
   458 F.3d 931 (9th Cir. 2006) ................................................................................6, 9

*Jews For Jesus v. Brodsky*,
   993 F. Supp. 282 (D.N.J.), aff'd, 159 F.3d 1351 (3d Cir. 1998) ..........................2

*Kos Pharms. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004) ............................................................................11, 12

*Marshak v. Treadwell*,
   240 F.3d 184 (3d Cir. 2001) ................................................................................6

*Med. Sec. Card Co. v. Scriptwell*,
   2024 WL 5697438 (D. Del. Oct. 29, 2024) ......................................................11

*Nat'l Football League Props., v. Wichita Falls Sportswear*,
   532 F. Supp. 651 (W.D. Wash. 1982) ...............................................................3

*New Balance Athletics, v. USA New Bunren Int'l*,
   424 F. Supp. 3d 334 (D. Del. 2019) ...................................................................3

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
   920 F.2d 187 (3d Cir. 1990) ..............................................................................11

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
   453 F. Supp. 2d 834 (D. Del. 2006) ...................................................................4

*Three Rivers Confections, LLC v. Warman*,
   660 F. App'x 103 (3d Cir. 2016) ........................................................................4

*U.S. Jaycees v. Philadelphia Jaycees*,
   639 F.2d 134 (3d Cir. 1981) ................................................................................3

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*,
   2013 WL 898140 (N.D. Cal. Mar. 8, 2013) ....................................................4, 9

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*,
   758 F.3d 1069 (9th Cir. 2014) ...........................................................................4, 7

iii

**Statutes**

15 U.S.C. § 1116(a) ............................................................................................................11

15 U.S.C. § 1127 ..................................................................................................................4

## **INTRODUCTION**

Bluebird's opposition rests on the affirmative defense of trademark abandonment. But, as courts have repeatedly held, a rebrand does not constitute an abandonment of trademark rights; particularly whereas here, X Corp. continues to use the TWITTER Marks as part of its brand identity, including in the minds of consumers (unrebutted 95% recognition). X Corp. uses the TWITTER Marks in the twitter.com domain, client and vendor materials, and other commercial settings, among others. These are not merely "historical" "remnants"; they are bona fide uses of a valuable trademark, supported by documents and sworn testimony.

The affirmative defense of abandonment is a disfavored revocation of property rights that must be proven by clear and convincing evidence. Bluebird has no evidence that X Corp. ceased all use of the TWITTER Marks, as is its burden. Instead, Bluebird argues that X Corp. has made less use of the TWITTER Marks following a rebrand. But the quantum of use is legally irrelevant given X Corp.'s continued use and exploitation of the marks' goodwill and brand equity.

Given X Corp.'s likelihood of success, irreparable harm is presumed and apparent from Bluebird's attempt to coopt the TWITTER Marks' goodwill. The balance of equities and public interest favor immediate injunctive relief given Bluebird's willful actions and its admission that it does not need the TWITTER name to launch its social media platform.

The Court should grant X Corp.'s motion to stop Bluebird's "heist," maintain the status quo, and prevent inevitable confusion and harm to X Corp.

## ARGUMENT

**I.     X Corp. is Likely to Succeed on its Trademark Infringement and Dilution Claims.**

  **A.     Bluebird's Use of the TWITTER Marks is Likely to Cause Confusion and Dilution.**

Bluebird barely contests the *Lapp* factors. It does not dispute that the marks and services are identical or that the channels and consumers overlap completely. Bluebird's bad faith is apparent based on its knowledge of X Corp.'s rights and its deliberate marketing to evoke an association with X Corp.'s goodwill. *See* D.I. 11-13; 11-14 at 3, 31, 50, 54, 59, 69, 73, 75, 81, 83. The name for Bluebird's new platform will be "Twitter." Flores Decl. Ex. 2, 154:10-14. This undermines Bluebird's argument (D.I. 29 at 20) that the "new" portion of the "twitter.new" domain will dispel confusion. Confusion is inevitable. Similarly, a disclaimer that appears in the smallest font, at the bottom of the webpage, and *after* consumers are asked to sign up for the infringing platform, Flores Decl. Ex. 2, 159:6-167:16, cannot dispel confusion Bluebird intentionally seeks to create. *See Jews For Jesus v. Brodsky*, 993 F. Supp. 282, 303 (D.N.J.), aff'd, 159 F.3d 1351 (3d Cir. 1998) (disclaimer does not alleviate confusion where domain misappropriates mark).

Bluebird provides no legally sufficient rebuttal to the Poret Survey, which isolated the effect of Bluebird's use of the TWITTER mark itself and showed 37.7% confusion (even with Bluebird's small disclaimer). D.I. 12. at ¶ 4. Bluebird did not present a rebuttal survey—an omission that undermines Bluebird's cursory critiques. *Cf Eagle Snacks, v. Nabisco Brands*, 625 F. Supp. 571, 583 (D.N.J. 1985) (inferring that non-introduced survey results would undermine case); *Nat'l Football League Props., v. Wichita Falls Sportswear*, 532 F. Supp. 651, 658 (W.D. Wash. 1982) (granting injunction where plaintiff's survey was "uncontroverted").

Bluebird similarly fails to engage with X Corp.'s dilution claim. The TWITTER Marks' fame is undisputed, and Bluebird's use of "twitter" on a competing platform will necessarily diminish their distinctiveness. *See New Balance Athletics, v. USA New Bunren Int'l*, 424 F. Supp. 3d 334, 351-53 (D. Del. 2019) (dilution found where virtually identical famous mark used on same goods).

**B.      Bluebird Fails to Carry Its Heavy Burden to Show Abandonment.**

Abandonment, being "in the nature of a forfeiture" must be "strictly" proven by clear and convincing evidence. *U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 139 (3d Cir. 1981); *EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 564 (D.N.J. 2000). Bluebird bears the burden to prove both (1) discontinuation of use, and (2) intent to abandon (or not resume use). *Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 547 F. Supp. 1095, 1114 (D.N.J. 1982), *aff'd*, 719 F.2d 56 (3d Cir.

1983); *Three Rivers Confections, LLC v. Warman,* 660 F. App'x 103, 109 (3d Cir. 2016); 15 U.S.C. § 1127. Bluebird establishes neither.

### 1. <u>A Rebrand Is Not a Forfeiture of Rights</u>

Bluebird's argument that X Corp.'s rebrand constitutes legal abandonment of longstanding, incontestable trademark rights is not the law. Courts routinely reject abandonment defenses, including after a rebrand, where a trademark owner continues to use and exploit the goodwill in its marks. *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 846 (D. Del. 2006) (no abandonment after merger and rebrand where legacy mark used on old packaging and promotional materials and appeared as sub-line on new materials); *BIEC Int'l. v. Glob. Steel Servs.*, 791 F. Supp. 489, 522, 538 (E.D. Pa. 1992) (no abandonment where circulation of prior manuals bearing the former logo by licensees continued).

For example, in *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, the Ninth Circuit held that Wells Fargo had not abandoned its acquired ABD trademark because its continued bona fide uses demonstrated that Wells Fargo could continue to benefit from the goodwill and recognition associated with ABD. 758 F.3d 1069, 1072 (9th Cir. 2014); including using "formerly ABD" in customer solicitations and re-directing traffic from the ABD domain to the Wells Fargo website. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 2013 WL 898140, at *2, 6 (N.D. Cal. Mar. 8, 2013), *rev'd and remanded, Wells Fargo*, 758 F.3d 1069. Courts have explicitly recognized

that phrases such as X Corp.'s use of "formerly Twitter" (D.I. 11-8, 11-9) "capitalize on the goodwill and source identification of the marks [and] constitutes bona fide use." *Am. Ass'n for Just. v. Am. Trial Laws. Ass'n*, 698 F. Supp. 2d 1129, 1139-40 (D. Minn. 2010) (using "formerly" preserved rights in prior mark post-rebrand). A rebrand is a business decision about primary branding, not a forfeiture of rights in marks that continue to be validly maintained like Dunkin Donuts (now Dunkin), Federal Express (now FedEx), and even Oldsmobile (ceased production in 2004) and Borders (closed in 2011, acquired by Barnes & Noble). Flores Decl., Ex. 4.

X Corp. rebranded the platform to X but never ceased commercially exploiting the TWITTER Marks. *See* D.I. 11 at ¶ 27. Bluebird's acknowledgment that the TWITTER Marks retain enormous goodwill (D.I. 11-14 at 54, 59, 71, 75, 81) undermines its argument because continued capitalization on the source identification and goodwill of a mark precludes an abandonment finding. *Am. Ass'n*, 698 F. Supp. 2d at 1139-40; *Com. Bancorp v. Hill*, 2010 WL 2545166, at *12 (D.N.J. June 18, 2010) ("use" means that which "maintains the public's identification of the mark with the proprietor."). Bluebird is also wrong that "residual goodwill" is irrelevant. Rather, "[p]ublic recognition [by third parties] is probative of a party's actual use of a mark for the obvious reason that the public cannot be aware of a mark's association with a service or product unless the party has actually used the mark to create the association." *Ciphertrust, Inc. v. TruSecure Corp.*, 2005 WL

5

8248105, at *18 (E.D. Va. Nov. 28, 2005); *Marshak v. Treadwell*, 240 F.3d 184, 199 (3d Cir. 2001) (no abandonment without "proof that the owner ceased to commercially exploit the mark's secondary meaning in the [relevant] industry."); *BIEC*, 791 F. Supp. at 534 (no abandonment where no evidence that trademark "ceased to be associated in the public's mind with [plaintiff's] goods or services").

### 2. X Corp. Has Not Discontinued Use of the TWITTER Marks

While it is not X Corp.'s burden to *disprove* abandonment, the evidence unequivocally shows X Corp.'s continued use of the TWITTER Marks and ongoing goodwill. Use is evaluated under the totality of the circumstances and includes any genuine commercial exploitation that maintains the mark's source-identifying function. *See Electro Source, LLC v. Brandess-Kalt-Aetna Grp.*, 458 F.3d 931, 940 (9th Cir. 2006); *Marshak*, 240 F.3d at 199-200. Even a single instance of good-faith use defeats abandonment. *Brown & Brown, v. Cola*, 2011 WL 1103867, at *11 (E.D. Pa. Mar. 23, 2011); *Carter-Wallace, Inc. v. Procter & Gamble*, 434 F.2d 794, 804 (9th Cir. 1970) (same); *Cumulus Media, v. Clear Channel Commc'ns*, 304 F.3d 1167, 1174 (11th Cir. 2002) (limited but continuous use defeated abandonment). X Corp. easily satisfies this standard through its presented evidence. *See, e.g.*, D.I. 11 ¶¶ 39-54.

Bluebird's characterization of X Corp.'s use as "historical" "remnants" is objectively wrong. X Corp.'s use of the TWITTER Marks in its marketing materials,

vendor guidelines, communications, and vendor platform remain an integral part of X Corp.'s business. *See e.g.,* D.I. 11 ¶¶ 43-46; 11-5; Baseer Reply Decl. ¶¶ 4, 18, 31. Bluebird ignores X Corp. communications showing that guidelines and materials were shared with vendors as recently as October 2025. D.I. 11-5 at 67-98.[1]

Bluebird also mischaracterizes and misconstrues the relevance of other evidence:

- **Uses of twitter.com, social media profiles, and other webpages**: Consumers continue to reach X Corp.'s platform through twitter.com, Flores Decl. Ex. 1. 35:7-19; 61:18-62:1, which directly "capitalize[s] on the source identification and goodwill of the [TWITTER] mark by directing those individuals who were drawn to the website by the [TWITTER] mark to the new [x.com] website." *Am. Ass'n*, 698 F. Supp. 2d at 1139-40 (redirected domains demonstrate bona fide use); *Wells Fargo*, 758 F.3d at 1072 (maintaining old domain and metatags). X Corp.

---

[1] Bluebird attempts to "disqualify" Baseer's statements regarding use at marketing events and correspondence with clients. Baseer's declaration was based on "personal knowledge and a review of company records, and on information from individuals at X Corp," D.I. 11 ¶ 1, and Baseer testified that he collected evidence in collaboration with others at X Corp. Flores Decl. Ex. 1, 92:14-93:13. Counsel's objections to Bluebird's deposition notice does not undermine the veracity of Baseer's declaration. *See Astrazeneca AB v. Camber Pharms.*, 2015 WL 7307101, at *3 (D. Del. Nov. 19, 2015) (declaration was "credible evidence" in support of injunction).

similarly maintains various webpages, materials and profiles, all of which are accessible to consumers (including Bluebird's counsel), and show continued and ongoing customer engagement. D.I. 11-3, 11-4, 11-5, 11-6; Flores Decl. Ex. 1, 95:7-8; 97:2-97:11; 119:17-21; 121:13-122:3; Baseer Reply Decl. ¶¶ 18-27.

- **Uses on mobile app**: Bluebird attempts to impugn Baseer's sworn statements that there are more than 200,000 current users of X Corp.'s TWITTER-branded app and ignores that his knowledge is based on corporate records and personal knowledge. Flores Decl. Ex. 1, 52:5-23; Baseer Reply Decl. ¶¶ 9-13. Despite its ability to do so, X Corp. has never forced users to update to an X-branded version of the app. Baseer Reply Decl. ¶ 14, Ex. 1. The authorized distribution of older versions confirms continued commercial exploitation of the TWITTER Marks. Flores Decl. Ex. 1, 220:21-225:12; Flores Decl. Ex. 2, 136:3-138:23; Baseer Reply Decl. ¶¶ 15-16.

- **Licensing of the TWITTER Marks**: X Corp. continues to permit third parties to use its trademarks under the terms of its TWITTER brand guidelines. D.I. 11 ¶¶ 49-50, 52. These guidelines, constitute an agreement by and with third-parties to "use the Twitter trademarks solely for the purposes expressly authorized by [X Corp.]," and that "all rights to

8

the Twitter trademarks are the exclusive property of [X Corp.], and all goodwill generated through [third-party] use will inure to the sole benefit of [X Corp.]." D.I. 11-6 at 17.

Bluebird's reliance on cases like *Specht v. Google*, *Nelson-Ricks Cheese* and *Chicago Mercantile Exch. Inc. v. Ice Clear US*, are misplaced. *See* D.I. 29 at 6-8. *Specht* involved a complete cessation of business operations for years. Similarly, in *Nelson*, the plaintiff provided just two instances of historical use unrelated to any use in commerce—unlike the varied and myriad uses X Corp. has here. *Chicago Mercantile* did not address claims of abandonment, and the weight of authority of cases like *American Association for Justice* and *Wells Fargo* underscore that X Corp. continues to actively exploit the TWITTER Mark's goodwill to identify a current source.

### 3. Intent Is Irrelevant Here and Otherwise Unproven

Where use has not ceased, the intent prong is irrelevant. *Electro Source*, 458 F.3d at 937-38. Regardless, X Corp.'s continued use, enforcement, renewals, and this litigation demonstrate the absence of any intent to abandon. D.I. 11 ¶¶ 27-29; *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1139 (D.N.J. 1993) (rejecting abandonment where plaintiff monitored use of the mark and enforced against unauthorized users, including defendants). Lapse of certain registrations does not demonstrate abandonment of the core TWITTER Marks. *Crash Dummy Movie LLC*

9

*v. Mattel*, 601 F.3d 1387, 1391 (Fed. Cir. 2010). X Corp.'s selective renewal and maintenance demonstrates the exact opposite—an intent to maintain validly used marks on specific goods and services.

Bluebird's reliance on Elon Musk's public statements about the rebrand, including removal of the TWITTER Marks from X Corp.'s offices and primary domain does not satisfy the intent standard where bona fide use continues. *See Brown & Brown*, 2011 WL 1103867, at *14 ("prospective declaration of intent to cease use in the future" does not meet intent standard); *Ciphertrust*, 2005 WL 8248105, at *19 ("When an owner of a mark announces an intention to cease using the mark, but fails to actually do so, there is no abandonment.").

## II. X Corp. is Likely to Succeed on Its Copyright Claim.

Bluebird adopted a substantially similar Twitter Bird logo and also used an identical reproduction of X Corp.'s copyrighted Bird Logo in its launch materials. D.I. 11-14 at 6, 53, 78. These uses go well beyond mere "bird imagery" and constitute infringement. *EETHO Brands, Inc. v. Common Cents Distributors,* 2025 WL 2044421, at *5-6 (D.N.J. July 21, 2025).



### III. The Remaining Preliminary Injunction Factors Favor X Corp.

Likelihood of success triggers the statutory presumption of irreparable harm. 15 U.S.C. § 1116(a); *Med. Sec. Card Co. v. Scriptwell*, 2024 WL 5697438, at *7 (D. Del. Oct. 29, 2024). Bluebird has not rebutted it. Consumer diversion, loss of control and goodwill are classic irreparable injuries. *Kos Pharms. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004). That is exactly what will happen if Bluebird launches a new social media platform branded as TWITTER—particularly given Bluebird's intent to bring advertisers onto its infringing platform. Baseer Reply. Decl. ¶ 38.

An injunction to maintain the status quo will not harm Bluebird. It has admitted to a "heist" and cannot claim hardship from being required to stop unlawful conduct. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990). As Bluebird admits, it can still proceed with a full launch of its social

11

media platform—without the TWITTER name.  Flores Decl. Ex. 2, 194:21-195:9; Baseer Decl. Ex. 2, at 5.  The public interest favors preventing consumer confusion. *Kos Pharms*., 369 F.3d at 730.

## **CONCLUSION**

For the foregoing reasons, and those set forth in X Corp.'s opening brief, an injunction should issue.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  |  |
|  | */s/ Andrew C. Mayo* |
|  | _____ |
| *Of Counsel:* | Andrew C. Mayo (#5207) |
|  | Randall J. Teti (#6334) |
| Megan K. Bannigan | 500 Delaware Avenue, 8th Floor |
| Jared I. Kagan | P.O. Box 1150 |
| Nicole M. Flores | Wilmington, DE 19899 |
| Daniel N. Cohen | (302) 654-1888 |
| DEBEVOISE & PLIMPTON LLP | amayo@ashbygeddes.com |
| 66 Hudson Boulevard | rteti@ashbygeddes.com |
| New York, NY  10001 |  |
| (212) 909-6000 | *Attorneys for Plaintiff X Corp.* |
| mkbannigan@debevoise.com |  |
| jikagan@debevoise.com |  |
| nmflores@debevoise.com |  |
| dncohen@debevoise.com |  |

Dated: February 20, 2026

12

## **CERTIFICATION**

The undersigned hereby certifies that the foregoing **PLAINTIFF X CORP.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** contains 2,499 words, excluding the cover page, tables, and signature blocks, and that it complies with the Court's type, font, and word limitations.

*/s/ Andrew C. Mayo*
_____
Andrew C. Mayo