IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| X CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1510-CFC |
| | ) | |
| OPERATION BLUEBIRD, INC., | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF X CORP.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
DEFENDANT OPERATION BLUEBIRD, INC.'S SUPPLEMENTAL BRIEF
AND IN FURTHER SUPPORT OF ITS MOTION FOR PRELIMINARY
<u>INJUNCTION</u>**

*Of Counsel:*

Megan K. Bannigan
Jared I. Kagan
Nicole M. Flores
Daniel N. Cohen
Anita S. Kapyur
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY  10001
(212) 909-6000
mkbannigan@debevoise.com
jikagan@debevoise.com
nmflores@debevoise.com
dncohen@debevoise.com
askapyur@debevoise.com

Dated: May 22, 2026

ASHBY & GEDDES
Andrew C. Mayo (#5207)
Randall J. Teti (#6334)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
rteti@ashbygeddes.com

*Attorneys for Plaintiff X Corp.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...........................................................................1

ARGUMENT ......................................................................................................4

   I.  Bluebird Misconstrues Its Heavy Burden to Prove Abandonment. ................4

   II. Bluebird's Premise That Rebranding Amounts to Abandonment is Equally Flawed. ...........................................................................................8

   III.Bluebird Cannot Strictly Prove Discontinuance of Use. ................................9

      A. Bluebird's Failure to Address X Corp.'s Record Evidence of Use is Fatal to its Abandonment Defense...........................................................9

      B. Bluebird's Attack on X Corp.'s Use of Twitter.com Fails.......................10

      C. Bluebird's Attack on X Corp.'s Google Keyword Purchases Fares No Better.......................................................................................................18

      D. Bluebird Cannot Transform X Corp.'s Use of "Formerly Known as Twitter" into Evidence of Abandonment...............................................20

   IV.Bluebird Cannot Prove Intent Not to Resume Use.......................................21

   V. Bluebird Cannot Prove Abandonment of Marks Whose Goodwill Persists..22

   VI.The Equities and Public Interest Favor Preliminary Relief..........................24

CONCLUSION.................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts v. JAND*,
  608 F. Supp. 3d 148 (S.D.N.Y. 2022) ........................................................18, 19

*1-800 Contacts v. Lens.com*,
  722 F.3d 1229 (10th Cir. 2013) ................................................................18, 19

*Abitron Austria GmbH v. Hetronic*,
  600 U.S. 412 (2023).........................................................................................10

*Am. Ass'n for Justice v. Am. Trial Lawyers Ass'n*,
  698 F. Supp. 2d 1129 (D. Minn. 2010)..................................................8, 12, 20, 21

*BIEC v. Glob. Steel Servs.*,
  791 F. Supp. 489 (E.D. Pa. 1992)....................................................................23

*Brown & Brown v. Cola*,
  2011 WL 1103867 (E.D. Pa. Mar. 23, 2011) .......................................................9

*Buying for the Home v. Humble Abode*,
  459 F. Supp. 2d 310 (D.N.J. 2006)...................................................................19

*Carter-Wallace v. Procter & Gamble*,
  434 F.2d 794 (9th Cir. 1970) .............................................................................9

*Channing Bete v. Greenberg*,
  2021 WL 4691597 (D. Mass. Jul. 12, 2021) ...............................................14, 15

*Chicago Mercantile Exch. v. Ice Clear US*,
  2021 WL 3630091 (N.D. Ill. 2021) ...................................................................15

*Ciba-Geigy Corp. v. Bolar Pharm.*,
  547 F. Supp. 1095 (D.N.J. 1982)......................................................................6, 7

*Cumulus Media v. Clear Channel Commc'ns*,
  304 F.3d 1167 (11th Cir. 2002) ..........................................................................5

*Doctor's Assocs. v. Desai*,
  2008 WL 11383804 (D.N.J. Aug. 12, 2008) .....................................................25

*EH Yacht v. Egg Harbor*,
  84 F. Supp. 2d 556 (D.N.J. 2000) ..........................................................6, 7

*Fagnelli Plumbing v. Gillece Plumbing & Heating*,
  2010 WL 2994163 (W.D. Pa. 2010).............................................................12

*GoForIt Ent. v. Digimedia.com*,
  750 F. Supp. 2d 712 (N.D. Tex. 2010) ......................................................14

*Hearts on Fire v. Blue Nile*,
  603 F. Supp. 2d 274 (D. Mass. 2009).........................................................19

*Hiland Potato Chip v. Culbro Snack Foods*,
  720 F.2d 981 (8th Cir. 1983) .....................................................................15

*In re Isi*,
  2023 WL 4743716 (T.T.A.B. 2023) ...........................................................16

*J.G. Wentworth v. Settlement Funding*,
  2007 WL 30115 (E.D. Pa. Jan. 4, 2007)....................................................19

*Jews for Jesus v. Brodsky*,
  993 F. Supp. 282 (D.N.J. 1998)..................................................................25

*Kusek v. Fam. Circle*,
  894 F. Supp. 522 (D. Mass. 1995)..............................................................15

*Lazzaroni USA v. Steiner Foods*,
  2006 WL 932345 (D.N.J. 2006) .................................................................10

*Lerner & Rowe v. Brown Engstrand & Shely*,
  119 F.4th 711 (9th Cir. 2024) ....................................................................18

*Marks Org. v. Joles*,
  784 F. Supp. 2d 322 (S.D.N.Y. 2011) ...............................................8, 20, 21

*Metro. Life Ins. v. O'M & Assocs.*,
  2009 WL 3015210 (N.D. Ill. 2009) .............................................................15

*Multi Time Machine v. Amazon.com*,
  804 F.3d 930 (9th Cir. 2015) ......................................................................18

*Nakava v. S. Pac. Elixir*,
2023 WL 4364502 (11th Cir. 2023) ....................................................................10

*Network Automation v. Advanced Sys. Concepts*,
638 F.3d 1137 (9th Cir. 2011) ............................................................................19

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
920 F.2d 187 (3d Cir. 1990) ...............................................................................25

*PBI Performance Prods. v. Norfab*,
514 F. Supp. 2d 725 (E.D. Pa. 2007)....................................................................6

*Perry v. H.J. Heinz Co. Brands*,
994 F.3d 466 (5th Cir. 2021) .......................................................................2, 5, 9

*Peter Luger v. Silver Star Meats*,
2002 WL 1870066 (W.D. Pa. May 17, 2002) ....................................6, 8, 23, 24

*Rascal House v. Jerry's Famous Deli*,
2024 WL 4524585 (T.T.A.B. Sept. 30, 2024)....................................5, 6, 17, 18

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017) .................................7

*Rescuecom v. Google*,
562 F.3d 123 (2d Cir. 2009) ...............................................................................19

*S & R v. Jiffy Lube*,
968 F.2d 371 (3d Cir. 1992) ...............................................................................25

*Specht v. Google*,
747 F.3d 929 (7th Cir. 2014) ..........................................................................6, 15

*Sterling Bank v. Sterling Bank & Trust*,
1996 WL 500946 (C.D. Cal. July 5, 1996).........................................................14

*U-Haul v. WhenU.com*,
279 F. Supp. 2d 723 (E.D. Va. 2003) ..................................................................14

*UHS of Delaware v. United Health Services*,
227 F. Supp. 3d 381 (M.D. Pa. 2016)..................................................................13

iv

*U.S. Pat. & Trademark Off. v. Booking.com B. V.*,
591 U.S. 549 (2020) ........................................................................................16

*Vision Center Nw. v. Vision Value*,
673 F. Supp. 2d 679 (N.D. Ind. 2009) .........................................................6, 15

*Warren Publ'g v. Spurlock*,
645 F. Supp. 2d 402 (E.D. Pa. 2009) ...............................................................6

*Wells Fargo v. ABD Ins. & Fin. Servs.*,
758 F.3d 1069 (9th Cir. 2014) .......................................................................17

*Wells Fargo & Co. v. WhenU.com*,
293 F. Supp. 2d 734 (E.D. Mich. 2003) .........................................................14

**Statutes**

15 U.S.C. § 1127 ...................................................................................10, 12

Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ................15, 16

## PRELIMINARY STATEMENT

Operation Bluebird Inc.'s ("Bluebird") supplemental brief fails at the threshold because it asks the Court to decide the wrong legal question. Putting aside the record evidence of X Corp.'s continued bona fide use of the TWITTER, TWEET, and Bird Logo Marks (the "TWITTER Marks"), Bluebird misstates the governing legal standard. The question is not whether X Corp. has affirmatively proven bona fide use (though it has), nor whether those uses, viewed in isolation, would independently establish trademark rights. The question is whether ***Bluebird***—the party asserting the affirmative defense of abandonment—has shown it is likely to prove, by the heightened strict proof standard, that X Corp. has completely discontinued and intends not to resume use of the TWITTER Marks. It has not.

Bluebird repeatedly and erroneously reverses that legal burden. It argues that X Corp. cannot "demonstrate that it is likely to succeed in showing" continued use, X Corp. has not "contended that it intends to resume use," and that selected uses are not "sufficient for X to avoid a judgment" of abandonment. D.I. 67 at 2, 5 n.2, 7. That framing is incorrect as a matter of law because abandonment is an affirmative defense, and the TWITTER Marks are registered and incontestable. On a motion for a preliminary injunction, Bluebird must show that it is likely to strictly prove both elements of abandonment—X Corp. need not disprove the defense. *See* D.I. 68 at 25-28.

Placing the burden of proof for abandonment on the rightsholder, as Bluebird urges, constitutes reversible error. *See Perry v. H.J. Heinz Brands*, 994 F.3d 466, 474-76 (5th Cir. 2021). Bluebird's supplemental brief invites that error by treating alleged uncertainty, factual disputes, and supposed gaps in X Corp.'s evidence of use as reasons to deny preliminary relief. *See* D.I. 67 at 2. But any uncertainty cuts against Bluebird given that abandonment is Bluebird's only defense to X Corp.'s meritorious infringement claim. Bluebird cannot defeat a preliminary injunction by identifying debatable issues; it must show it is likely to carry its heavy burden on abandonment. *See infra* I.

Bluebird's theory also rests on a contradiction: it argues that the Twitter name lacks source-identifying significance when X Corp. uses it for its services, but has critical source-identifying significance when Bluebird seeks to appropriate it. Bluebird's concession that X Corp.'s uses of the TWITTER Marks inform consumers that X Corp.'s social-media services "have been rebranded to X" is fatal to Bluebird's defense. D.I. 67 at 11. That is textbook source-identifying use, not abandonment. And Bluebird's entire business plan depends on the source-identifying power of the Twitter name: Bluebird admits that "[b]y far the most effective way" to communicate its intent to rebuild the online speech community that existed under the name Twitter "is through use of the name Twitter." *Id.* at 4. Bluebird's business plan thus defeats its abandonment defense.

Bluebird's abandonment theory also fails because Bluebird primarily addresses only two of X Corp.'s many demonstrated uses of the TWITTER Marks—the twitter.com redirect and Google keyword purchases—while ignoring the rest of the record evidence, including use in the Apple App Store, advertising materials, vendor onboarding materials, Help Center and blog pages, legacy social-media accounts, and authorized partner and third-party uses.[1]  That selective engagement is also fatal.  To prevail on abandonment, Bluebird must prove complete cessation of *all* bona fide use—it cannot demonstrate a likelihood of meeting that standard by disputing only two examples while leaving substantial evidence of ongoing use unrebutted.

Bluebird cannot transform X Corp.'s rebrand into a forfeiture of trademark rights.  The Lanham Act does not impose a use-it-as-your-primary-brand-or-lose-it rule.  X Corp.'s uses of the TWITTER Marks tell consumers, advertisers, vendors, and partners that the services they knew under the TWITTER Marks are now offered by the same source under the X brand—precisely the kind of source-identifying function trademark law is intended to protect.  *See* D.I. 68 at 7-25.

The remaining preliminary-injunction factors also favor relief.  Bluebird does

---

[1]  Even if Bluebird intended to limit its brief to the TWITTER mark (to the exclusion of TWEET and the Bird Logo), it failed to address all of X Corp.'s use of the TWITTER mark on these materials.

not contest likelihood of confusion.  Irreparable harm is therefore presumed and is evident from the threatened loss of control over marks that consumers overwhelmingly associate with X Corp.'s platform and services.  Bluebird, on the other hand, has not launched its platform, and any hardship from an injunction is self-inflicted and not cognizable—a party that infringes with full knowledge of another's rights cannot complain of injury from being enjoined.  *See infra* VI.  The Court should accordingly grant the requested preliminary injunction.

## ARGUMENT

### I.    Bluebird Misconstrues Its Heavy Burden to Prove Abandonment.

Bluebird's supplemental brief rests on a threshold legal error: it treats X Corp. as bearing the burden to prove use of the TWITTER Marks or intent to resume use. That is backwards.  The TWITTER Marks are registered and incontestable, Bluebird does not contest likelihood of confusion, and irreparable harm is presumed.  *See* D.I. 58 ("Tr.") 203:1-11.  At this stage, the only remaining merits question is whether Bluebird is likely to carry its burden of proving abandonment by strict proof at trial. The answer is no.

Bluebird's contrary framing infects its entire brief.  It repeatedly argues that X Corp. failed to show sufficient use, failed to articulate an intent to resume use, or failed to avoid a judgment of abandonment.  *See* D.I. 67 at 2, 5 n.2, 7.  But abandonment is Bluebird's affirmative defense, and Bluebird bears the heavy burden

4

to prove both complete discontinuance of use and intent not to resume use.  It cannot shift that burden to X Corp. by asserting, for example, that the Court has already "concluded that X has no credible evidence of use of the claimed TWEET or Twitter Bird marks." *Id.* at 6.

The Lanham Act reflects a deliberate policy choice: trademark rights are not lightly forfeited, and rebranding does not automatically trigger forfeiture.  The burden of establishing abandonment is demanding by design.  Even when a presumption of abandonment arises after three years of nonuse (which it does not here), that presumption shifts only the burden of production, not the ultimate burden of persuasion.  *See Cumulus Media v. Clear Channel Commc'ns,* 304 F.3d 1167, 1176-77 (11th Cir. 2002) (citing Fed. R. Evid. 301).  Once X Corp. introduced substantial evidence of continued use, Bluebird was obligated to "***prove otherwise***" through strict proof; it cannot discount the evidence and demand more from X Corp. *Perry*, 994 F.3d at 474-76 (emphasis added).  Indeed, adopting Bluebird's backwards approach would constitute reversible error, as explained in X Corp.'s supplemental brief.  *See* D.I. 68 at 26.

Bluebird's cited authorities underscore the point: most involve the statutory presumption of abandonment that arises only after three or more years of nonuse— a presumption that does not apply here.  *See, e.g.*, *Rascal House v. Jerry's Famous Deli*, 2024 WL 4524585 (T.T.A.B. 2024) (presumption of abandonment due to

5

twelve years of nonuse); *Specht v. Google*, 747 F.3d 929 (7th Cir. 2014) (five years of nonuse); *Vision Center Nw. v. Vision Value*, 673 F. Supp. 2d 679, 689 (N.D. Ind. 2009) (ten years of nonuse); *Warren Publ'g v. Spurlock*, 645 F. Supp. 2d 402, 442 (E.D. Pa. 2009) (twenty-three years of nonuse); *PBI Performance Prods. v. Norfab*, 514 F. Supp. 2d 725, 729 (E.D. Pa. 2007) (four years of nonuse).[2] Bluebird's failure to acknowledge its heavy burden, coupled with its reliance on presumption-based authorities, confirms that Bluebird does not appreciate that it alone bears the full weight of proof.

The factually closest federal authorities support X Corp.: where a defendant has not demonstrated complete discontinuance coupled with intent not to resume use by clear and convincing evidence, an abandonment defense cannot defeat preliminary injunctive relief. *See EH Yacht v. Egg Harbor*, 84 F. Supp. 2d 556, 564-66 (D.N.J. 2000); *Peter Luger v. Silver Star Meats*, 2002 WL 1870066, at *14-15

---

[2]  These authorities are further distinguishable on their facts. *See, e.g.*, *Rascal House*, 2024 WL 4524585, at *14 (respondent failed to rebut abandonment where it sought to "resurrect" its marks more than a decade after closing its restaurants); *Specht*, 747 F.3d at 934-35 (sporadic efforts, including use on website for inactive business, were insufficient bona fide use); *Vision Center Nw.*, 673 F. Supp. 2d at 687-88 (white-pages listing insufficient, and plaintiff did not allege or argue intent to resume use); *Warren Publ'g*, 645 F. Supp. 2d at 442 (registration alone, without commercial use, insufficient); *PBI Performance Prods.*, 514 F. Supp. 2d at 729 (no allegation that plaintiff "ever used" the challenged trade dress in commerce).

(W.D. Pa. 2002); *Ciba-Geigy v. Bolar Pharm.*, 547 F. Supp. 1095, 1114 (D.N.J. 1982).

Bluebird's contention that "substantial and determinative legal questions" "counsel against a preliminary injunction" merely reverses the burden yet again. D.I. 67 at 2. A defendant cannot recast its own failure of proof as a "substantial" legal question. If substantial questions exist about Bluebird's ability to prove abandonment, then by definition Bluebird has not shown that it is likely to strictly prove its affirmative defense, and X Corp. is likely to succeed on the merits of its trademark infringement claim. *See EH Yacht*, 84 F. Supp. 2d at 564-66 (where some evidence "weigh[ed] against" finding of nonuse, defendant failed to carry its burden at preliminary injunction stage); *Ciba-Geigy*, 547 F. Supp. at 1114.

Even if there is some merits uncertainty (and there is not), that does not preclude preliminary relief in this Circuit. A movant need only make a merits showing "significantly better than negligible" and show likely irreparable harm; the Court then balances all four factors, and "the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). Here, X Corp.'s merits showing far exceeds that threshold, Bluebird does not contest likelihood of confusion or X Corp.'s irreparable harm, and the equities favor relief—particularly because Bluebird's

7

supposed "substantial" questions concern its own affirmative defense, not an element X Corp. must prove.

## II.    Bluebird's Premise That Rebranding Amounts to Abandonment is Equally Flawed.

Bluebird's second legal fallacy follows from its first.  Having disregarded its heavy burden, Bluebird builds its substantive argument on an equally flawed premise: that a "nois[y] and decisive[]" rebrand constitutes trademark abandonment. *See* D.I. 67 at 11, 15.  That is not the law.

Trademark rights do not vanish because a company adopts a new primary brand while continuing to use its legacy trademarks to identify source and preserve goodwill.  A contrary holding would eviscerate the protection afforded to incontestable trademarks and punish legitimate rebranding.  *See, e.g.*, *Peter Luger*, 2002 WL 1870066, at *6-8 (rejecting abandonment defense notwithstanding rebrand); *Marks Org. v. Joles*, 784 F. Supp. 2d 322, 328-29 (S.D.N.Y. 2011) (same); *Am. Ass'n for Justice v. Am. Trial Lawyers Ass'n*, 698 F. Supp. 2d 1129, 1139-40 (D. Minn. 2010) (same).

Bluebird concedes as much.  It admits that X Corp.'s uses of the TWITTER Marks post-rebrand tell customers that X Corp.'s social-media services "have been rebranded to X."  D.I. 67 at 11.  That is a source-identifying message—precisely the kind of bona fide use that defeats an abandonment defense.  *See* D.I. 68 at 4-8.

8

III.    **Bluebird Cannot Strictly Prove Discontinuance of Use.**

A.    **Bluebird's Failure to Address X Corp.'s Record Evidence of Use is Fatal to its Abandonment Defense.**

Bluebird's abandonment defense fails on the record, even setting aside Bluebird's legal errors.  Abandonment requires proof of *complete cessation* of use. *Brown & Brown v. Cola*, 2011 WL 1103867, at *11 (E.D. Pa. 2011); *accord Carter-Wallace v. Procter & Gamble*, 434 F.2d 794, 804 (9th Cir. 1970).  The record contains myriad evidence of X Corp.'s current, deliberate, commercial use of the TWITTER Marks.  Bluebird's supplemental brief largely ignores that record, focusing only the twitter.com domain and X Corp.'s purchase of Google keywords. But even that selective attack misses the mark, because both uses are bona fide uses in the ordinary course of X Corp.'s digital business.

Bluebird therefore fails twice over.  First, the two uses it challenges are legally sufficient.   Second, Bluebird ignores the rest of X Corp.'s record evidence of continued use.[3]   *See* D.I. 68 at 11-24.  A party cannot satisfy its burden of proving *complete* discontinuance by addressing only two categories of use and leaving the rest unrebutted.  *See Perry*, 994 F.3d at 475-76 (no abandonment where defendant failed to rebut evidence of continued use, explaining that "even minor or sporadic

---

[3]    Neither Bluebird's opposition brief nor its supplemental brief addresses the full record evidence of X Corp.'s continued use of the TWITTER Marks.  *See* D.I. 29; 67.

9

good faith uses of a mark will defeat the defense of abandonment"); *Lazzaroni USA v. Steiner Foods*, 2006 WL 932345, at *4 (D.N.J. 2006) (rejecting abandonment defense at the preliminary-injunction stage where plaintiff produced evidence of continued use and defendants "offered no evidence" to rebut that showing); *Nakava v. S. Pac. Elixir*, 2023 WL 4364502, at *3 (11th Cir. 2023) (defendant "did not satisfy its burden" because it "failed to rebut" evidence of plaintiff's continued use).

### B.   Bluebird's Attack on X Corp.'s Use of Twitter.com Fails.

Bluebird's attack on X Corp.'s use of twitter.com fails because that use is live, deliberate, and source-identifying.   Bluebird's overarching narrative—that X Corp.'s uses of the TWITTER Marks are merely "automated," "mechanical," or "historical remnants"—fundamentally misstates both the facts and the law.  D.I. 67 at 11-14.   Bluebird effectively asks the Court to hold that a trademark owner's deliberate use of its own legacy domain to route consumers to the same rebranded service is not trademark use "as a matter of law."  D.I. 67 at 2.  But Bluebird cites no authority endorsing such a rule, the absence of which is both unsurprising and telling.

The Lanham Act requires only bona fide use "in the ordinary course of trade" to identify and distinguish the source of goods or services.  15 U.S.C. § 1127; *Abitron Austria GmbH v. Hetronic*, 600 U.S. 412, 428-29 (2023).  It does not demand that the use meet some extra-statutory threshold of being manual or operated by hand.

Although the Court identified the meaning of "use" in the abandonment context as a question with which it was grappling, *see* Tr. 202:7-203:2, Bluebird largely sidestepped that threshold legal question and instead argued *ipse dixit* that X Corp. is not using the mark at all.  D.I. 67 at 7-8.

The case law on use and abandonment makes clear that X Corp.'s use of twitter.com satisfies the statutory standard.  X Corp. uses twitter.com to deliberately route consumers who search for or navigate to "Twitter" to its live platform because consumers recognize the TWITTER mark.  That use serves a source-identifying purpose and results in ***more than four million users accessing X Corp.'s services every day***.  D.I. 11 ¶ 41.  Bluebird's effort to recast that use as "token," "residual," or "archival" depends on nonbinding cases involving materially different facts, such as leftover inventory, old magazine issues, stray directory listings, and inactive webpages.  *See* D.I. 67 at 5-7.  Those cases do not suggest that deliberate, daily, consumer-facing use of a legacy domain to connect consumers with the trademark owner's live services constitutes cessation of bona fide use.  *See* D.I. 68 at 7-9 (citing cases finding analogous use bona fide).

Bluebird's characterization of the twitter.com redirect as "automated" and "mechanical" further misrepresents the record and the law.  D.I. 67 at 11.  As Mr. Baseer testified, X Corp. could have allowed twitter.com to resolve to nothing or remain static—as it did with other legacy domains—but instead made the deliberate

11

decision to route twitter.com to X Corp.'s live platform.[4]  Tr. 71:8-76:1.  That is an affirmative, ongoing choice to use the TWITTER mark in connection with X Corp.'s services, not a mechanical relic of a prior configuration.  And on the law, Bluebird cites no authority suggesting that a deliberate, consumer-facing use falls outside the statutory definition of bona fide use merely because it operates through a technical mechanism such as a redirect.  The law supports the opposite.  *See Am. Ass'n for Justice*, 698 F. Supp. 2d at 1139-40 (directing individuals from former website to rebranded website via domain redirection was bona fide use); *Fagnelli Plumbing v. Gillece Plumbing & Heating*, 2010 WL 2994163, at *6 (W.D. Pa. 2010) (domain redirection was use in commerce).

Bluebird's framing of the redirect as "historical" is equally misplaced.  There is nothing historical about a use that occurs every day in real time.  X Corp. continues to use the mark in a source-identifying manner that results in millions of consumers accessing X Corp.'s services on a daily basis.  Bluebird's contrary labels are not legal analysis, and its invented categories of "mechanical" and "historical" use find no basis in the Lanham Act or abandonment case law.  *See* 15 U.S.C. § 1127.

---

[4]  In addition to Mr. Baseer's responsibilities as Director of Legal, Mr. Baseer helped develop and implement X Corp.'s rebrand strategy.  *See* Tr. 68:15-71:3. He was therefore well positioned to testify about X Corp.'s brand-management decisions to continue using the TWITTER Marks, including its decision to route consumers from twitter.com to X Corp.'s live platform.

Bluebird's cited authorities do not withstand scrutiny and only underscore how far removed they are from the facts and legal posture here. In *UHS*, the defendant hospital system fully rebranded from "UHS" to "United Health Services" and, ***for thirteen years***, used only the new mark on its website, newsletters, reports, and advertisements. *UHS of Delaware v. United Health Services*, 227 F. Supp. 3d 381, 388-401 (M.D. Pa. 2016). It "took no action to continue commercial exploitation of the 'UHS' mark," and its own executive characterized residual uses of "UHS" as "rogue" advertising. *Id.* at 401-02. Against that record, the court addressed the continued maintenance of the uhs.net domain name in connection with a static website—not the use of a legacy domain to redirect users to an active website coupled with many other uses—and held that the domain on its own did not establish continuing trademark use absent evidence that it identified source rather than merely internet location. *Id.* at 401.

Unlike the passive domain in *UHS*, X Corp. uses twitter.com to actively route consumers to X Corp.'s live platform every day. And unlike the record in *UHS*, X Corp. has offered proof that it uses the domain to identify the source of its services to consumers who continue to search for and associate Twitter with X Corp.'s platform. Tr. 71:24-72:2, 73:14-74:5. The domain does not merely identify an internet address; it answers the source-identifying question consumers ask when they type or search for "Twitter": *where is the service now?* It directs them to X Corp.'s

13

current platform, thereby promoting X Corp.'s goods and services. That Bluebird itself relies on this same consumer association to justify its own business model, *see* D.I. 67 at 4, only reinforces the point.

The *WhenU.com* cases are likewise inapposite. They involved software that categorized browsing activity on a purely internal basis to trigger pop-up ads and never displayed the mark to consumers or used it to identify a source. *See U-Haul v. WhenU.com.*, 279 F. Supp. 2d 723, 728 (E.D. Va. 2003); *Wells Fargo v. WhenU.com*, 293 F. Supp. 2d 734, 757 (E.D. Mich. 2003). *GoForIt Ent. v. Digimedia.com* is similarly far afield: it involved Wildcard DNS technology that redirected users whenever they typed in "com.org" regardless of whether any mark appeared in the address. 750 F. Supp. 2d 712, 726-27 (N.D. Tex. 2010). That is not analogous to a trademark owner using its own branded domain to direct consumers to its platform where it offers services to the public.

Nor do *Sterling Bank* or *Channing Bete* assist Bluebird. *Sterling Bank*'s order and findings were vacated pursuant to settlement, and the case did not involve a domain redirect—or even use of a legacy domain or website. *See Sterling Bank v. Sterling Bank & Trust*, 1996 WL 500946, at *1 (C.D. Cal. 1996). *Channing Bete* never reached the use-in-commerce question; the court found only that the redirection at issue was not likely to cause confusion. *Channing Bete v. Greenberg*, 2021 WL 4691597, at *5 (D. Mass. Jul. 12, 2021). Bluebird's reliance on *Channing*

14

*Bete* for a proposition the court never addressed is emblematic of its erroneous approach.

Bluebird's remaining nominal-use authorities are no more on point. None involved a trademark owner's active use of its own branded domain to route consumers to its own live service. *See Vision Center Nw.*, 673 F. Supp. 2d at 687-88 (white-pages listing); *Metro. Life Ins. v. O'M & Assocs.*, 2009 WL 3015210, at *3 (N.D. Ill. 2009) (single internal fax); *Kusek v. Fam. Circle*, 894 F. Supp. 522, 533 (D. Mass. 1995) (two magazine back issues available only upon request); *Hiland Potato Chip v. Culbro Snack Foods*, 720 F.2d 981, 984 (8th Cir. 1983) (resale of returned inventory); *Specht*, 747 F.3d at 934-35 (website that did not identify any goods or services and two isolated, unsuccessful sales efforts).[5]  X Corp.'s daily use of twitter.com to direct millions of users to its live platform bears no resemblance to the facts of these cases.  It is not a stray reference or residual artifact; it is an ongoing, consumer-facing use that is part of X Corp.'s larger program to commercially exploit the TWITTER Marks.

Apparently recognizing the absence of helpful authority on abandonment, Bluebird reaches for the Trademark Manual of Examining Procedure ("TMEP") and

---

[5]  *Chicago Mercantile Exch. v. Ice Clear US* is further inapposite.  The court did not address trademark abandonment or a trademark owner's use; it considered only whether a licensee's "residual" references were infringing.  2021 WL 3630091, at *10 (N.D. Ill. 2021).

the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA").

Neither changes the analysis.  The TMEP is irrelevant here because it provides

trademark examiners with guidance on how to assess use necessary to support

*registration* of a trademark, not how a court should analyze an affirmative defense

of abandonment.  Moreover, the TMEP provision Bluebird invokes addresses

whether a domain name itself functions as the mark being registered—not whether

a trademark owner's use of a legacy domain evidences continued use of existing

marks after a rebrand.[6]  Importantly, the TMEP "does not have the force of law, is

not binding, and cannot be considered a 'mandate.'"  *In re Isi*, 2023 WL 4743716, at

*7 (T.T.A.B. 2023).

In any event, even on the TMEP's own registration-focused terms, Bluebird's

argument fails.  X Corp. does not use twitter.com merely as a static address or "only

to indicate location on the internet."  D.I. 67 at 18.  It actively and deliberately uses

the domain to route consumers who associate Twitter with X to X Corp.'s current

services.  That use does more than identify an internet location—it communicates

source continuity and actively promotes X Corp.'s goods and services.  *See id.* (citing

---

[6]  This case concerns whether X Corp. forfeited rights in its incontestable, registered TWITTER Marks—not whether twitter.com is independently registrable as a domain-name mark like "Booking.com."  *See* D.I. 68 n.2; *U.S. Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 554 (2020).

T.M.E.P. § 1215.02(a) for the proposition that a domain name must function as a trademark to be registrable).

Bluebird's reliance on the ACPA is likewise misplaced. *See* D.I. 67 at 19. Bluebird invokes the principle that a domain name used merely as an internet address is not, by itself, trademark use. *Id.* But the ACPA governs bad-faith *cybersquatting* by third parties, not whether a trademark *owner's* legacy mark in a domain to direct consumers to its active platform and preserve source identification constitutes continued use. Bluebird's attempt to import that principle into this abandonment analysis only underscores the lack of authority supporting its theory.[7]

Bluebird's argument that "Twitter" does not appear on the x.com homepage also demands more than the Lanham Act requires. *See Wells Fargo v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1072 (9th Cir. 2014) (domain redirect, without former mark on home page, constituted evidence of use). The statutory question is whether X Corp. has completely discontinued use. It has not. Its active, intentional, consumer-facing use of twitter.com is the opposite of abandonment. *See* Tr. 73:14-76:9. Bluebird's own authority confirms the point. *Rascal House* recognizes that maintenance of a former website to redirect consumers can constitute bona fide use in commerce where it reflects a "business calculation to benefit from the goodwill

---

[7]  If the ACPA were relevant at all, it would be because Bluebird's infringing use—not X Corp.'s—amounts to cybersquatting.

and mark recognition associated with [the legacy mark]." *See* 2024 WL 4524585, at *8; D.I. 67 at 14 (discussing *Wells Fargo*).  There is clear and credible evidence in the record that X Corp. uses twitter.com in this manner.

### C.    Bluebird's Attack on X Corp.'s Google Keyword Purchases Fares No Better.

Bluebird's attempt to minimize X Corp.'s purchase of "Twitter" as a Google keyword fares no better.  Bluebird's argument that keyword purchases are not trademark use because competitors often buy each other's marks as keywords without committing trademark infringement conflates two different legal questions: what constitutes "use in commerce" and what constitutes "infringement."  The cases Bluebird cites held the challenged uses were ***not likely to cause confusion***—not that keyword purchases do not constitute use in commerce.  *See Multi Time Machine v. Amazon.com*, 804 F.3d 930, 938-39 (9th Cir. 2015); *1-800 Contacts v. Lens.com*, 722 F.3d 1229, 1242-43 (10th Cir. 2013); *Lerner & Rowe v. Brown Engstrand & Shely*, 119 F.4th 711, 718 (9th Cir. 2024).  Bluebird's conflation of "non-infringing" with "not use" is a fundamental analytical error.

Indeed, Bluebird's own cited authorities confirm that keyword purchases constitute use of a trademark under the Lanham Act.  *See 1-800 Contacts v. JAND*, 608 F. Supp. 3d 148, 154 (S.D.N.Y. 2022) ("purchasing a competitor's trademark in relation to keyword advertising counts as a 'use in commerce' of the competitor's trademark under the Lanham Act"); *Rescuecom v. Google*, 562 F.3d 123, 127-30 (2d

Cir. 2009) (Google's sale of trademarks as keywords constitutes use in commerce); *Lens.com*, 722 F.3d at 1242 (assuming the premise that "purchasing the [c]hallenged [k]eywords satisfied the use-in-commerce requirement"). Bluebird also ignores additional authority treating keyword purchases as bona fide use. *See, e.g.,* D.I. 68 at 10-11; *Network Automation v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144-45 (9th Cir. 2011) (on which *Lerner* relies); *Buying for the Home v. Humble Abode*, 459 F. Supp. 2d 310, 323 (D.N.J. 2006); *J.G. Wentworth v. Settlement Funding*, 2007 WL 30115, at *6 (E.D. Pa. 2007); *Hearts on Fire v. Blue Nile*, 603 F. Supp. 2d 274, 280-83 (D. Mass. 2009). The weight of the authority confirms that X Corp.'s purchase of Google keywords to promote its goods and services constitutes use within the meaning of the Lanham Act.

Bluebird's cited authorities on this issue, if anything, strengthen X Corp.'s position. Those cases recognize that purchasing a trademark as a search keyword can constitute use in commerce, including where a third party purchases another company's mark to advertise an alternative product. *See JAND*, 608 F. Supp. 3d at 154. X Corp.'s use is stronger: it purchases its own valid trademark to direct users searching for "Twitter" to X Corp.'s current platform and to ensure consumers continue to associate those marks with X Corp. *See* Tr. 189:11-22, 191:19-24; D.I. 68 at 10-11. That is active commercial use of X Corp.'s own mark to identify source, direct consumers to X Corp.'s services, and preserve X Corp.'s goodwill. If

19

purchasing another's mark as a keyword constitutes use in commerce, then purchasing one's own mark to direct consumers to one's own services is *a fortiori* use.

### D.    Bluebird Cannot Transform X Corp.'s Use of "Formerly Known as Twitter" into Evidence of Abandonment.

Bluebird asserts that "automated redirection is no different from the use of 'formerly Twitter' that X attempted to convince the Court was a trademark use," treating both as evidence of abandonment.  D.I. 67 at 11.  But case law squarely forecloses Bluebird's argument that "formerly" language is not trademark use.  Courts recognize that "formerly" language can preserve trademark rights by capitalizing on the prior mark's goodwill and maintaining public association between the legacy name and its owner.  *See* D.I. 68 at 11-14; *Joles*, 784 F. Supp. At 328-29 (collecting cases); *see also Am. Ass'n for Justice*, 698 F. Supp. 2d at 1139-40 (use of "formerly" preserved rights by capitalizing on the mark's "source identification and goodwill").  That is exactly what X Corp.'s "formerly Twitter" uses do: they tell consumers that the service they knew as Twitter is now X.

Bluebird unwittingly concedes this point when it claims that an injunction barring its use of the Twitter name would cause irreparable harm because it would prevent Bluebird from "communicat[ing]" its "very specific intent" to rebuild "the online speech community that used to exist under the name Twitter."  D.I. 67 at 4.  On Bluebird's own telling, the Twitter name conveys to consumers a particular

source, history, and community—precisely the source-identifying value and goodwill that X Corp.'s "formerly Twitter" language capitalizes on and preserves.

This contradiction underscores the central flaw in Bluebird's abandonment defense. Bluebird's own brief admits that X Corp.'s uses "are ways of telling customers that X no longer is Twitter, and that its social media services have been rebranded to X." D.I. 67 at 11. That is not evidence of abandonment—it is the textbook example of "formerly" use that courts recognize as trademark use, communicating source continuity, capitalizing on existing goodwill, and guiding consumers from the legacy brand to the current one. *See Joles*, 784 F. Supp. 2d at 328-29; *Am. Ass'n for Justice*, 698 F. Supp. 2d at 1139-40.

Bluebird's contrary position would make rebrand transparency self-defeating. Under Bluebird's theory, the more clearly a company tells consumers that a legacy trademark identifies the source of rebranded services, the more that communication would serve as evidence of abandonment. That is not the law. The Lanham Act protects the consumer-guidance function that X Corp.'s uses of "formerly Twitter" perform, and Bluebird's invitation to penalize that transparency should be rejected.

## IV.   Bluebird Cannot Prove Intent Not to Resume Use.

Even if Bluebird could prove discontinuance—and it cannot—its defense fails for a second, independent reason: it has offered no evidence that X Corp. intended not to resume use of the TWITTER Marks. Abandonment requires proof of both

21

discontinuance of use and intent not to resume use.  *See* D.I. 68 at 25-28.  Bluebird bears the burden on both elements.  *See id*.

Bluebird again attempts to shift the burden, arguing that X Corp. "has never even contended that it intends to resume use."  D.I. 67 at 5, n.2.  But absent a statutory presumption—which does not exist here—***Bluebird*** must strictly prove intent not to resume.  It has identified no record evidence that could satisfy that burden.

The record points decisively the other way.  X Corp. continues to use the TWITTER Marks across multiple commercial channels, and X Corp.'s witness testified to an intent to continue using the marks as source identifiers.  *See* Tr. 80:2-81:2 (X Corp. "deliberately added" "Welcome to X (Formerly known as Twitter)" so that users would know its app was associated with Twitter); *id.* 82:14-83:1 (X Corp. "wanted to continue use" of the TWITTER Marks).  Those ongoing uses and that testimony foreclose any finding that Bluebird is likely to prove the requisite intent.  Because failure on either statutory element defeats abandonment, Bluebird's failure to show it is likely to prove an intent not to resume is dispositive.

## V.    Bluebird Cannot Prove Abandonment of Marks Whose Goodwill Persists.

Bluebird's abandonment theory fails for yet another reason: X Corp. reasonably preserved and transitioned the residual goodwill associated with the TWITTER Marks.  As X Corp. explained in its supplemental brief, a company that

transitions to a new brand does not forfeit residual goodwill in its former mark where it undertakes reasonable efforts to carry that goodwill forward. *See* D.I. 68 at 29-31 (citing *Peter Luger* and *EH Yacht*). X Corp. did so by acquiring the TWITTER Marks for substantial value and preserving their source-identifying function through the twitter.com redirect, "formerly Twitter" language, continued public-facing and partner references, and a gradual transition from TWITTER to X branding across customer-facing materials. *See* Tr. 72:3-80:2-14, 181:17-24; D.I. 11 ¶ 41; D.I. 11-8 at 3.

Bluebird has no answer and offers no evidence that consumers have ceased associating TWITTER with X Corp. To the contrary, X Corp.'s survey shows that 95% of the public continues to recognize the TWITTER Marks, and Bluebird's own launch strategy depends on that continuing association. D.I. 13 ¶ 4; D.I. 67 at 4. Bluebird cannot strictly prove abandonment of marks whose goodwill persists overwhelmingly in the minds of consumers. *See BIEC v. Glob. Steel Servs.*, 791 F. Supp. 489, 538 (E.D. Pa. 1992) (no abandonment absent evidence plaintiff's mark ceased to be "associated in the public's mind with [plaintiff's] goods or services").

Nor would a contrary ruling give Bluebird license to trade on that goodwill. *Peter Luger* rejected exactly that proposition, holding that "[w]hether [plaintiff] abandoned the name or not," abandonment did not confer on the defendants a right to compete unfairly by exploiting residual confusion. 2002 WL 1870066, at *2.

23

Bluebird has no legitimate interest in launching a competing platform under marks whose value derives entirely from X Corp.'s goodwill, and the public has no interest in being misled into believing that Bluebird is affiliated with X Corp. or is an authorized continuation of X Corp.'s predecessor platform.

## VI.    The Equities and Public Interest Favor Preliminary Relief.

Once Bluebird's abandonment defense falls away—as it must, given Bluebird's failure to carry its burden on any element—X Corp.'s motion for preliminary relief is straightforward. Bluebird does not contest likely confusion and agrees there is a presumption of irreparable harm. *See* Tr. 203:1-13; D.I. 68 at 31. X Corp. is therefore likely to succeed on the merits. *See* D.I. 10 at 5-16. The presumption of irreparable harm is especially appropriate where Bluebird seeks to launch under marks whose value derives from X Corp.'s goodwill and the public's continuing association of the TWITTER Marks with X Corp.'s predecessor platform.[8]

Bluebird's claimed hardship is not cognizable because it is entirely self-inflicted. Courts in this Circuit do not consider harm that results from a defendant's

---

[8]   Bluebird's cursory argument that X Corp.'s harm does not threaten to "moot" the case is unpersuasive. *See* D.I. 67 at 3 n.1. X Corp.'s irreparable harm is not limited to seizure of the twitter.com domain name or interference with keyword purchases, *see id.* at 4, but includes the loss of goodwill and source recognition in its marks—injuries that money damages cannot fully remedy. That harm is further presumed here and is precisely the type of harm preliminary injunctive relief is designed to prevent.

own wrongdoing when evaluating the balance of hardships. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (defendant that "openly, intentionally, and illegally appropriated the [plaintiff's] marks" could not claim harm from an injunction because "it brought any and all difficulties occasioned by the issuance of an injunction upon itself"); *Doctor's Assocs. v. Desai*, 2008 WL 11383804, at *2 (D.N.J. 2008) ("When evaluating whether preliminary relief would irreparably harm a defendant, courts generally do not consider harm of the defendant's own doing."); *S & R v. Jiffy Lube*, 968 F.2d 371, 379 (3d Cir. 1992) (self-inflicted harm outweighed by injury to trademark owner where infringement is occurring).

Bluebird adopted the TWITTER Marks with full knowledge of X Corp.'s rights. The only harm it now claims is the loss of its ability to trade on the consumer recognition those marks command—in other words, harm from being unable to profit off its infringing conduct. *See* D.I. 67 at 4 (arguing that Bluebird's "entire business model" depends on "use of the name Twitter"). Under these circumstances, Bluebird cannot be heard to complain that an injunction will cause it irreparable injury. *See Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 308 (D.N.J. 1998) (defendant could not complain of injury from a preliminary injunction where it misappropriated the mark and name of plaintiff "with full knowledge of the rights of the [p]laintiff").

X Corp.'s harm, on the other hand, is presumed and concrete. Should Bluebird launch under the Twitter name, X Corp. would suffer an immediate loss of control over marks that the public overwhelmingly still recognizes and associates with its predecessor platform. *See* D.I. 13 ¶ 4. That harm cannot be undone after the fact—once consumers associate Bluebird with the TWITTER Marks, the resulting confusion and dilution of X Corp.'s goodwill are irreversible. The public interest reinforces the point. *See* D.I. 10 at 20; D.I. 68 at 31-32. Allowing Bluebird to launch under X Corp.'s legacy marks at the moment of peak consumer association would reward precisely the opportunistic conduct the Lanham Act is designed to prevent.

## CONCLUSION

Bluebird bears the heavy burden to show that it is likely to strictly prove abandonment Rather than satisfy that burden, it attempts to reverse it, disregards significant record evidence, and asks the Court to treat a rebrand as forfeiture of valuable trademark rights. The law does not permit that result. Because Bluebird does not contest confusion, irreparable harm is presumed, and Bluebird fails to carry its heavy burden on the only defense it asserts, the Court should grant X Corp.'s motion.

26

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

Andrew C. Mayo (#5207)
Randall J. Teti (#6334)
500 Delaware Avenue, 8th Floor

*Of Counsel:*

Megan K. Bannigan
Jared I. Kagan
Nicole M. Flores
Daniel N. Cohen
Anita S. Kapyur
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY  10001
(212) 909-6000
mkbannigan@debevoise.com
jikagan@debevoise.com
nmflores@debevoise.com
dncohen@debevoise.com
askapyur@debevoise.com

Dated: May 22, 2026

P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
rteti@ashbygeddes.com

*Attorneys for Plaintiff X Corp.*

27

## <u>WORD COUNT CERTIFICATION</u>

The undersigned hereby certifies that Plaintiff X Corp.'s Supplemental Brief in Opposition to Defendant Operation Bluebird, Inc.'s Supplemental Brief and in Further Support of its Motion for Preliminary Injunction contains 6,242 words (exclusive of the table of contents and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.