IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| X CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1510-CFC |
| | ) | |
| OPERATION BLUEBIRD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFF X CORP.'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT OPERATION BLUEBIRD, INC.'S SUPPLEMENTAL BRIEF
REGARDING BOND AMOUNT</u>**

*Of Counsel:*

Megan K. Bannigan
Jared I. Kagan
Nicole M. Flores
Anita S. Kapyur
Daniel N. Cohen
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mkbannigan@debevoise.com
jikagan@debevoise.com
nmflores@debevoise.com
askapyur@debevoise.com
dncohen@debevoise.com

Dated: May 29, 2026

ASHBY & GEDDES
Andrew C. Mayo (#5207)
Randall Teti (#6334)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
rteti@ashbygeddes.com

*Attorneys for Plaintiff X Corp.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................1

ARGUMENT ........................................................................................................2

    I.       Bluebird Must Substantiate its $50 Million Bond Request. .......................2

    II.     Bluebird Provides No Credible Evidence of Costs if Enjoined...................3

    III.    Bluebird's Methodology is Entirely Speculative. .......................................4

    IV.    X Corp. Proposes a Bond of $500,000..........................................................8

CONCLUSION .....................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*BIEC Int'l v. Glob. Steel Servs.*,
    791 F. Supp. 489 (E.D. Pa. 1992)............................................................................9

*Fam. Inada v. FIUS Distribs.*,
    2019 WL 5295178 (D. Del. 2019).........................................................................2, 4

*Fujikura Composite Am. v. Dee*,
    2024 WL 4994346 (S.D. Cal. 2024).........................................................................6

*In re Selenious Acid Litig.*,
    2025 WL 1900949 (D.N.J. 2025).........................................................................2, 6

*Kos Pharms. v. Andrx*,
    369 F.3d 700 (3d Cir. 2004) ....................................................................................7

*Lennox Aes Holdings v. Benton*,
    2025 WL 3677143 (D. Del. 2025).........................................................................2, 5

*McNeil Nutritionals v. Heartland Sweeteners*,
    566 F. Supp. 2d 378 (E.D. Pa. 2008).........................................................................9

*Med. Sec. Card v. Scriptwell*,
    2024 WL 5697438 (D. Del. 2024).........................................................................4, 9

*Neo Gen Screening v. TeleChem Int'l*,
    69 F. App'x 550 (3d Cir. 2003) ................................................................................2

*Peter Luger Inc. v. Silver Star Meats Inc.*,
    2002 WL 1870066 (W.D. Pa. May 17, 2002) ...........................................................9

*Pomicter v. Luzerne Cnty. Convention Ctr. Auth. & SMG*,
    2016 WL 1706165 (M.D. Pa. 2016)..........................................................................2

*Silvertop Assocs. v. Kangaroo Mfg.*,
    319 F. Supp. 3d 754 (D.N.J. 2018)............................................................................6

*Synthes, Inc. v. Gregoris*,
    228 F. Supp. 3d 421 (E.D. Pa. 2017).........................................................................2, 5

3

*Times Mirror Mags. v. Las Vegas Sports News*,
   1999 WL 124416 (E.D. Pa. Mar. 4, 1999) ...........................................................9

*Transfer Print Foils v. Transfer Print Am.*,
   720 F. Supp. 425 (D.N.J. 1989) ...........................................................................4

*Well Care Pharmacy II v. W' Care*,
   2013 WL 3200111 (D. Nev. 2013) .......................................................................4

*Zambelli Fireworks Mfg. v. Wood*,
   592 F.3d 412 (3d Cir. 2010) .................................................................................2

**Other Authorities**

Derek Thompson, *Facebook Turns a Profit*, THE ATLANTIC (Sep. 17,
   2009),
   https://www.theatlantic.com/business/archive/2009/09/facebook-
   turns-a-profit-users-hits-300-million/26721/.......................................................6

Julia Kollewe, *Twitter makes first quarterly profit in its history*, THE
   GUARDIAN (Feb. 8, 2018),
   https://www.theguardian.com/technology/2018/feb/08/twitter-
   makes-first-quarterly-profit-history.....................................................................6

Pinterest, Inc., Registration Statement (Form S-1) (Mar. 22, 2019),
   https://www.sec.gov/Archives/edgar/data/1506293/000119312519
   083544/d674330ds1.htm.......................................................................................8

Reddit, Inc., Registration Statement (Form S-1) (Feb. 22, 2024),
   https://www.sec.gov/Archives/edgar/data/1713445/000162828024
   006294/reddits-1q423.htm.....................................................................................8

Snap Inc., Prospectus (Mar. 1, 2017),
   https://www.sec.gov/Archives/edgar/data/1564408/000119312517
   068848/d270216d424b4.htm. ...............................................................................8

TWITTER.NEW, https://twitter.new..................................................................................7

Will Ashworth, *Twitter's Got A Revenue Conundrum*, FORBES (Oct.
   10, 2013),
   https://www.forbes.com/sites/investopedia/2013/10/10/twitters-
   got-a-revenue-conundrum.....................................................................................8

## **PRELIMINARY STATEMENT**

A party requesting a substantial bond must support its request with concrete evidence of actual or non-speculative damages. Absent that showing, courts routinely set nominal or substantially reduced bonds. Bluebird's request for a $50 million bond is entirely speculative and unsupported. Even the authorities Bluebird cites involve bond requests of no more than $5 million—significantly less than the extraordinary sum Bluebird demands. Bluebird identifies no actual investments it stands to lose, nor any concrete costs beyond those necessary to select a different name if enjoined. When asked at his deposition how an injunction would harm the company, Bluebird's General Counsel could not identify any injury. Bluebird's *post hoc* arguments, devoid of evidentiary basis, do not withstand scrutiny.

X Corp. proposes a $500,000 bond. This amount far exceeds any realistic rebranding costs Bluebird would incur and is consistent with bonds set in similar trademark cases in this Circuit.

## ARGUMENT

**I.    Bluebird Must Substantiate its $50 Million Bond Request.**

A defendant seeking a substantial bond must provide specific evidence to justify its request.[1] *See, e.g.*, *Neo Gen Screening v. TeleChem Int'l*, 69 F. App'x 550, 556 (3d Cir. 2003) (affirming nominal bond where defendant produced no evidence of irreparable harm); *Lennox Aes Holdings v. Benton*, 2025 WL 3677143, at *2 (D. Del. 2025) (rejecting defendant's bond request where harm was unsupported).

Bluebird need not estimate its losses with mathematical certainty, but must, at minimum, provide a rational, non-speculative basis for its calculation so the Court can "place on the record [its] reasons for setting a bond amount, so as to provide a meaningful basis for appellate review." *In re Selenious Acid Litig.*, 2025 WL 1900949, at *27 (D.N.J. 2025) (quotation omitted); *see Synthes v. Gregoris*, 228 F. Supp. 3d 421, 447 (E.D. Pa. 2017); *Pomicter v. Luzerne Cnty. Convention Ctr. Auth. & SMG*, 2016 WL 1706165, at *8 (M.D. Pa. 2016) (citing cases imposing nominal bonds absent evidence of harm).

---

[1]    Rule 65(c) "does not impose any obligation on the parties" to seek a bond. *Zambelli Fireworks Mfg. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010); *see also Fam. Inada v. FIUS Distribs.*, 2019 WL 5295178, at *8 (D. Del. 2019) (plaintiff did not waive right to oppose bond where it did not brief the issue).

2

## II.   Bluebird Provides No Credible Evidence of Costs if Enjoined.

There is no evidence that Bluebird will incur significant costs if enjoined.  On the contrary, when asked how an injunction would harm Bluebird, Stephen Coates, Bluebird's General Counsel, could not identify any financial injury:

```
    Q.    And how will Operation Bluebird          02:13
be harmed if it's not allowed to use the          02:13
Twitter brand?                                     02:13
    A.    Well, we won't be able to use           02:13
the brand that's our choice.                       02:13
    Q.    Anything else?                           02:13
    A.    No, not that I can think of.            02:13
```

D.I. 36-2 at 195:3-9.

Mr. Coates's testimony is unsurprising, given that Bluebird has openly boasted it has spent $0 on marketing.



**Durk Barnhill** ✓ • 3rd+
Proven CEO/ CMO/CGO, Digital Marketing Specialist, Brand Exp…
5d • 🌐

Update After Week One. No marketing. No PR firm. Just demand.
145,000 people requested their handles at twitter.new
850 million media impressions
$10.5 million in earned media
50+ publications — Reuters, The Verge, Ars Technica, Gizmodo, The Independent, Yahoo Finance and more
Named one of LinkedIn's Top Stories of the Week
Total marketing spend: $0
Turns out people are excited to get #BackWithYourEx"
💙 twitter.new

💬😍❤️ 42                                    1 comment · 1 repost

D.I. 11-14 at 81.

Moreover, an injunction would not require any technical changes to Bluebird's platform—it would only prohibit use of the TWITTER Marks. Thus, the only potential costs are those associated with selecting a different name, which are minimal given that Bluebird has neither launched nor invested resources in developing the TWITTER brand. *See Fam. Inada*, 2019 WL 5295178, at *8 (waiving bond where defendant could continue sales without disputed mark); *Transfer Print Foils v. Transfer Print Am.*, 720 F. Supp. 425, 441 (D.N.J. 1989) ($350,000 bond for name change during injunction); *Med. Sec. Card Co. v. Scriptwell*, 2024 WL 5697438, at *9 (D. Del. 2024) ($194,626 bond for rebranding costs); *Well Care Pharmacy II v. W' Care*, 2013 WL 3200111, at *9 (D. Nev. 2013) ($20,000 bond where defendants had to cease use of disputed name).

## III.    Bluebird's Methodology is Entirely Speculative.

Bluebird's $50 million bond request is wholly speculative and finds no basis in law or fact for at least two reasons.

**First**, because Bluebird has not yet launched, it has no reliable basis for its revenue projections. Bluebird derives its average revenue per user ("ARPU") figure by starting with the ARPUs of well-established social media companies and calculating an industry average of $12.75. D.I. 75 at ¶¶ 3, 7, 8. Bluebird then applies a "much more conservative" ARPU of $5.50 per user, but provides no explanation for how it reached this discounted figure. *Id.* More fundamentally, Bluebird offers

4

no reliable basis for using either figure.  The ARPUs of mature platforms that have spent years advertising and building their user bases bear no relation to the revenues a pre-launch platform might generate at inception.[2] *See Synthes*, 228 F. Supp. 3d at 447 ("[T]he bond amount cannot be purely speculative.").

Bluebird's projections are particularly speculative because it has not yet earned any revenue, much less identified when it expects to do so.  As Mr. Coates testified, Bluebird had no concrete launch plans even before X Corp. filed its preliminary injunction motion.

```
Q.      Are there any time frames in        01:31
which you're planning to launch a platform  01:31
called "Twitter"?                           01:31
    A.      There is no specific timeline    01:31
yet.                                         01:31
    Q.      Okay.  So -- you have absolutely 01:31
no idea when it might go live?               01:31
    A.      Correct.                         01:31
```

D.I. 36-2 at 154:18-25.

---

[2]  Bluebird's suggestion that such ARPUs are appropriate because of the tremendous goodwill in the TWITTER Marks underscores its bad faith intent and the need for injunctive relief.

```
13        Q.        Prior to the preliminary                     01:32
14   injunction motion being filed, was there a                  01:32
15   specific timeline when the social media                     01:32
16   platform planned to launch?                                 01:32
17        A.        No.                                          01:32
```

D.I. 36-2 at 155:13-17.

**Second**, even if Bluebird's revenue projections were reliable, revenue is not a suitable measure of harm because it does not account for costs. *See, e.g.*, *Silvertop Assocs. v. Kangaroo Mfg.*, 319 F. Supp. 3d 754, 773 (D.N.J. 2018), *aff'd*, 931 F.3d 215 (3d Cir. 2019) (reducing bond to reflect lost *profits* because "loss of gross sales" is not "the true measure of harm"); *Fujikura Composite Am. v. Dee*, 2024 WL 4994346, at *5 (S.D. Cal. 2024) ("[C]ourts more typically set a security amount based on lost profits rather than lost revenue."). As a pre-launch platform with significant start-up costs, Bluebird is unlikely to profit in its first year. Twitter itself did not turn a profit for its first twelve years.[3] Facebook took five.[4] A proper

---

[3]   Julia Kollewe, *Twitter makes first quarterly profit in its history*, THE GUARDIAN, https://www.theguardian.com/technology/2018/feb/08/twitter-makes-first-quarterly-profit-history.

[4]   Derek Thompson, *Facebook Turns a Profit*, THE ATLANTIC, https://www.theatlantic.com/business/archive/2009/09/facebook-turns-a-profit-users-hits-300-million/26721/.

estimate must account for costs.[5] *See In re Selenious Acid Litig.*, 2025 WL 1900949, at \*27.

The bond calculation should also reflect Bluebird's "ability to minimize" losses by marketing under a different name. *Kos Pharms. v. Andrx*, 369 F.3d 700, 732 n. 28 (3d Cir. 2004). The injunction X Corp. seeks would not prevent Bluebird from launching under a different name and competing on the merits of its services. Mr. Coates himself agreed that Bluebird does not need the Twitter name to launch.

```
        Q.    Does Operation Bluebird need the          01:32
name "Twitter" to launch its social media              01:32
platform?                                              01:32
        A.    No.                                       01:32
```

D.I. 36-2 at 155:22-25.

Bluebird offers no evidence that it would be unable to attract users under an alternative, "unfamiliar" name (D.I. 75 ¶ 5), nor does it explain why its platform could not grow organically rather than trading on X Corp.'s goodwill. Bluebird's assertion that it would lose most of its users simply by using a different name is conclusory and underscores its intent to infringe X Corp.'s valuable trademarks.

---

[5] Even where defendants have evidenced high estimated revenues, courts have entered bonds many multiples lower. *See, e.g.*, *Benton*, 2025 WL 3677143, at \*2 ($5,000 bond despite $30 million bond request).

## IV.   X Corp. Proposes a Bond of $500,000.

A reliable ARPU estimate should reflect comparable companies' first-year performance, not their current, optimized revenues, and should apply to Bluebird's actual users who requested handles, not its unsubstantiated projection of 10 million users.  The earliest publicly available ARPU data for the platforms Bluebird cites—which are generous comparators because they reflect performance years after launch—show ARPUs of $0.39 for Pinterest,[6]  $0.05 for Snapchat,[7]  $1.44 for Reddit,[8]  and $1.47 for Twitter.[9]   That averages to approximately $0.84—less than one-sixth of Bluebird's purportedly "conservative" $5.50 figure.  As of May 29, 165,128 users had requested handles on Bluebird's platform.[10]  Assuming ARPU is even a proper basis to set a bond, Bluebird launches imminently, the preliminary

---

[6]   Pinterest, Inc., Registration Statement, 70 (2019), https://www.sec.gov/Archives/edgar/data/1506293/000119312519083544/d674 330ds1.htm.

[7]   Snap Inc., Prospectus, 67 (2017), https://www.sec.gov/Archives/edgar/data/1564408/000119312517068848/d270 216d424b4.htm.

[8]   Reddit, Inc., Registration Statement, 101 (2024), https://www.sec.gov/Archives/edgar/data/1713445/000162828024006294/reddi ts-1q423.htm.

[9]   Will Ashworth, *Twitter's Got A Revenue Conundrum*, FORBES (2013), https://www.forbes.com/sites/investopedia/2013/10/10/twitters-got-a-revenue-conundrum.

[10]   TWITTER.NEW, https://twitter.new (last visited May 29, 2026).

injunction lasts a year,  and every user generates revenue—a more realistic first-year ARPU of $0.84 yields only $138,707 in revenue.

Notwithstanding that Bluebird's net profits would likely be negative after properly accounting for its start-up costs, X Corp. proposes a $500,000 bond—more than three times what any reasonable calculation would support.  This amount far exceeds any realistic rebranding costs and is adequate to protect Bluebird if wrongfully enjoined.  This amount is also at the high end of bonds set in similar trademark cases in this Circuit.  *See, e.g.*, *BIEC Int'l v. Glob. Steel Servs.*, 791 F. Supp. 489, 555 (E.D. Pa. 1992) ($15,000 bond); *Times Mirror Mags. v. Las Vegas Sports News*, 1999 WL 124416, at *8 (E.D. Pa. 1999), *aff'd*, 212 F.3d 157 (3d Cir. 2000) ($25,000 bond); *Peter Luger v. Silver Star Meats*, 2002 WL 1870066, at *17 (W.D. Pa. 2002) ($100,000 bond); *Med. Sec. Card*, 2024 WL 5697438, at *9 ($194,626 bond); *McNeil Nutritionals v. Heartland Sweeteners*, 566 F. Supp. 2d 378, 395 (E.D. Pa. 2008) ($500,000 bond).

## CONCLUSION

For the foregoing reasons, X Corp. respectfully requests that the Court set a bond in the amount of $500,000.

*Of Counsel:*                                          ASHBY & GEDDES

Megan K. Bannigan                                      */s/ Andrew C. Mayo*
Jared I. Kagan
Nicole M. Flores                                       _____
Anita S. Kapyur                                        Andrew C. Mayo (#5207)
Daniel N. Cohen                                        Randall Teti (#6334)
DEBEVOISE & PLIMPTON LLP                               500 Delaware Avenue, 8th Floor
66 Hudson Boulevard                                    P.O. Box 1150
New York, NY 10001                                     Wilmington, DE 19899
(212) 909-6000                                         (302) 654-1888
mkbannigan@debevoise.com                               amayo@ashbygeddes.com
jikagan@debevoise.com                                  rteti@ashbygeddes.com
nmflores@debevoise.com
askapyur@debevoise.com                                 *Attorneys for Plaintiff X Corp.*
dncohen@debevoise.com

Dated: May 29, 2026

10

## <u>WORD COUNT CERTIFICATION</u>

The undersigned hereby certifies that Plaintiff X Corp.'s Memorandum of Law in Opposition to Defendant Operation Bluebird, Inc.'s Supplemental Brief Regarding Bond Amount contains 1,493 words (exclusive of the table of contents and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.

*/s/ Andrew C. Mayo*
Andrew C. Mayo